MASON, Plaintiff in Error, *vs.* WOERNER & SCHLEIER, Defendants in Error.

1. The act of February 23, 1853, establishing the St. Louis land court, and giving it exclusive jurisdiction in certain cases, did not oust the jurisdiction of the other courts in such cases, until the land court was organized by the election of a judge and clerk.

*Error to St. Louis Court of Common Pleas.*

*J. E. Munford*, for plaintiff in error. The act establishing the St. Louis Land Court did not take away the jurisdiction of the Court of Common Pleas and Circuit Court, in cases affecting real estate, until the Land Court was organized by the election of judge and clerk. If this is not the true construction of the act, then there was a period of about seven months when

Mason *v.* Woerner.

all remedy of any nature in regard to real estate in St. Louis county was abolished; the liens of judgments and mechanics' liens were abolished, and the statute of limitations suspended during this period. The language of a law will, if possible, be so construed as to prevent a failure of justice, and courts will never impute to the legislature a design to enact an absurd or contradictory law. 7 Mass. 524. 1 Pick. 250. 1 Green's (N. J.) Rep. 242. 3 Cow. 95. When the first section of the act says that a court of *record* is hereby established, it means when the judge and clerk are elected and qualified, and a record is kept of the proceedings of the court. And when it is said that said court shall have exclusive jurisdiction of all suits of a certain class *hereafter* to be brought, and that all mechanics' liens shall *hereafter* be filed in the office of the *clerk* of said court, it is meant after the court is organized, and after a *clerk is elected.* The intention of a law is to prevail even against the letter. 1 Bay's (S. C.) Rep. 98. 1 Harp. (S. C.) Rep. 102. 17 Vermont, 179. If, however, the legislature intended to suspend all remedy for the recovery of real estate in St. Louis county, from the passage of the act until the Land Court was organized, then the act is unconstitutional. Art. 13, sec. 7, of constitution.

*Simmons* and *Colman*, for defendants in error. 1. The act establishing the Land Court took effect from its passage, and divested the Court of Common Pleas of its jurisdiction in cases thereafter arising involving the title to real estate. 2. The constitutional argument could only apply to the Circuit Court, which is established by the constitution. The Court of Common Pleas is a statutory court, and the power which confers jurisdiction may take it away.

GAMBLE, Judge, delivered the opinion of the court.

The act establishing the St. Louis Land Court was approved February 23d, 1853. Its last clause declares " this act to take effect from its passage." The first section is in these

words : " A court of record to be called the St. Louis Land Court is hereby established within and for the county of St. Louis." The second section gives to the court " original and *exclusive* jurisdiction in all actions to be brought *hereafter* at law or equity," in a great variety of cases stated in the section, comprehending all actions for the possession of land, and nearly all proceedings by which the title or possession of land can be affected. It is provided in the fifth section, that there shall be a judge of the court, whose qualification, election and compensation are provided for, and the terms of the court are, by that section, fixed for the *first Mondays in March* and October. Section 12 provides for the qualification and powers of the clerk of the court, and section 13 declares that " the first election for a judge and clerk of said court shall be held on the first of August next, and the governor shall issue his writ of election accordingly." The subsequent sections provide for the filing of abstracts of the judgments of other courts with the clerk of the Land Court, before the judgments shall become liens on real estate, and also for the filing of transcripts of the judgments of justices of the peace, in order to make them liens, and for the filing of mechanics' liens arising under the acts giving them liens on buildings.

The plaintiff brought the present action in the Court of Common Pleas, after the passage of the act establishing the Land Court, for the purpose of recovering the possession of a tract of land. The defendant demurred, because of want of jurisdiction in the court to entertain the cause. The demurrer was sustained, and the case is brought here by writ of error.

1. It is evident that the questions involved in this case affect many important interests of the people of St. Louis. Between the approval of the act and the organization of the court by the election of the officers, there intervened a period of some six months, in which there were probably not only many actions and proceedings affecting the title to real estate commenced in other courts, but many judgments were rendered in such courts and many transcripts from justices, and liens by mech-

anics were filed, by which the title to real estate was understood to be incumbered; and a construction is now to be given which is to affect all such proceedings.

The question in this case is, whether the jurisdiction of the other courts, in causes which were previously within their cognizance, is, by the passage of this act, and before the organization of the Land Court, by the election of the necessary officers, entirely taken away?

It is to be observed, that the jurisdiction of the other courts is not affected by this act in any other manner than by the grant of *exclusive jurisdiction* to the Land Court. It is not said that the other courts shall not exercise jurisdiction in the classes of cases mentioned in the second section. It is by the grant of exclusive jurisdiction to the Land Court that theirs is cut off. Now it is obviously the design of the general assembly that jurisdiction of such causes shall continue to be entertained, and justice in them administered by some court. It would be improper to impute to the legislature, sitting under a constitution that declares, " that courts of justice ought to be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice ought to be administered without sale, denial or delay," the design to suspend the administration of justice in several of the most important classes of cases that are brought in our courts. As it is impossible to imagine that such purpose was really entertained, it is not proper that the act shall have that effect, if any legitimate construction of its language will avoid such result. When, then, it is seen that the jurisdiction of the existing courts is only destroyed by the actual investiture of another tribunal with that jurisdiction, the question arises, when is such exclusive jurisdiction vested in the Land Court? It appears to be an answer consistent with reason and analogy, that it is vested only when there is such organization of the tribunal under the law, as renders the exercise of the jurisdiction practicable. When an estate or power is granted by words of present grant, we expect, in ordinary cases, to find a grantee

capable of holding the estate or exercising the power. The first section of the act establishes the court, but the expression employed does not, by any power in itself, cause the court then to exist. The word "court," with reference to a judicial tribunal, is used in different senses. Lord Coke says, a court is a *place* where justice is judicially administered. Coke's Lit. 58*a*. Another definition is, "a tribunal established for the public administration of justice, and composed of one or more judges, who sit for that purpose at fixed times and places, attended by proper officers." There is no definition given by any author, which recognizes the existence of a court distinct from the officers who are charged with the duty of administering the law. The Land Court had not, and could not have had existence while there were no officers having any duties to perform in relation to its jurisdiction. If we were to suppose the act repealed before the election of the officers, it would be difficult to conceive of a court as having existed under its provision, or possessing jurisdiction under the law. We think then that the language of the act conferring exclusive jurisdiction upon the Land Court, although speaking in the present tense, is necessarily to operate only in the future, when a court is organized capable of executing its functions, and that consequently, the exclusion of other courts from the exercise of jurisdiction over the same cases, is only effected by the actual existence of an organized land court. In this view of the case, as this action was commenced in May, 1853, after the passage of the act, and before the election of the judge and clerk of the Land Court, the jurisdiction of the Common Pleas was not ousted by the act itself, and the demurrer was improperly sustained.

Questions under the same act may arise as to the liens which, by different clauses of this act, are made to depend on their being filed in the Land Court, and we use those parts of the act as illustrating the position we maintain in regard to jurisdiction. It is evident that the act contemplates the continuance of the different provisions of law by which liens are created, and, for the purpose of convenience, provides that the evidence of such

incumbrances shall be brought together in the office of the Land Court. During the interval between the passage of the act and the election of the officers, the different courts of the county were in session, rendering judgments; justices of the peace were also engaged in giving judgments which were capable of being made liens upon real estate and enforced by execution, and mechanics were engaged in erecting buildings, which were subject to liens for the labor and materials employed in their erection. This latter class of liens were allowed but a short period for the claimants to file them in the proper office. All judgments and mechanics' liens were, by this act, to be filed in the office of this new court, in order to be liens on the real estate of the debtor. Now it is inconceivable that the general assembly should have designed to prevent judgments from being liens until filed in the office of the Land Court, when there could be no such office for six months after the passage of the act. In order to give a reasonable construction to the language of the act, it is necessary to restrict these requirements of the act to the filing of such judgments and liens as were rendered or filed after there existed an officer with whom they could be filed. The whole of the difficulty arises from the clause in the statute which gives it effect from its passage. Now grant that it is to have effect from its passage, yet such provisions in the body of the act as necessarily apply to things in the future, must apply to such things when they come into existence.

For instance, it is declared that there shall be two terms of the court held at the city of St. Louis, on the first Mondays in March and October. Now, although the act was passed on the 23d of February and took effect from its passage, it is clear that no term was to be held in the month of March next succeeding the approval of the act, because there could be no court to hold any term at that time. There was to be a court in the future and when the court was organized, it would hold terms in March and October.

The word "hereafter" is used in several sections and con-

tributes to increase the difficulty in construing the act. The second section confers the exclusive jurisdiction in all actions to be brought *hereafter* at law or equity, founded, &c. The sixteenth section enacts, " that all liens of mechanics, builders or artizans shall *hereafter* be filed in the office of the clerk of the Land Court. This word in an act would ordinarily be understood as applying to the time immediately subsequent to the taking effect of the act, but its signification or application may be controlled by the context. That the section cannot apply to a lien required to be filed immediately after the act took effect, and before there was any office of the the the clerk of the Land Court, is evident, although the word " hereafter" is used. The act is designed to be one of perpetual duration, and its terms are used, not with reference to the moment of time when the act takes effect, but providing for a new court to aid in administering the law, it looks to the jurisdiction which, in the future, this court, when organized, shall exercise, and in reference to that whole future, it designs to provide that " hereafter," that is, after the act has had its effect in organizing a new court, such court shall possess the powers and functions detailed in the act.

There are certain parts of the act that of course must go into effect before the organization of the court, for they were necessary to its organization. The provisions for a writ of election to be issued by the governor, and for holding the election itself must, of course, go into effect at some time previous to the time of the election, and no doubt this necessity occasioned the oversight in making the whole act take effect from its passage, instead of giving effect to different sections at different times. Upon the whole, however, we are satisfied that the proper construction of the act requires the different sections relating to jurisdiction and to filing judgments and liens, to commence their operation only when the new court was so provided with officers as to render the exercise of the jurisdiction, and the filing of judgments and liens practicable, and

that, in the mean time, the jurisdiction and powers of the other courts remained unaffected.

The judgment is, with the concurrence of the other judges, reversed, and the cause remanded.