The North American Oil Company *versus* Forsyth Brothers & Co.

| 48 | 291 |
|---|---|
| 164 | 81 |

| 48 | 291 |
|---|---|
| 209 | ⁴429 |

*Entry of judgment on reserved point, non obstante veredicto, when improper.—Construction of contract.*

| 48 | 291 |
|---|---|
| 30 SC | ³ 90 |
| | 291 |
| 48 | ³412 |
| 215 | |

1. In the performance of a contract there is a distinction between a readiness and a willingness to pay the contract price, which latter may be tested by the production of money or an offer to pay; but neither a tender nor an offer to pay can be required as the legal measure of proof of readiness, where the article contracted for is by the terms of the contract deliverable in lots, uncertain as to time and quantity, and where quality and measurement are prerequisite to payment. In such case readiness to pay falls back upon the intention of the party as manifested by his conduct and declarations.

2. The effect of notice by a defendant of the absolute rescission of a contract depend upon the previous conduct of the plaintiff, and it is error to confine the attention of the jury on the question of rescission to a consideration of the conduct of a plaintiff *under* the rescission notice.

3. It is error to submit a particular fact in a cause to the jury, and after the fact has been found by them, to enter judgment for the party against whom it was found, on the ground that the evidence was insufficient to establish it.

4. If a fact be improperly found the proper remedy is a new trial.

ERROR to the Common Pleas of *Allegheny county.*

This was an action of *assumpsit* by The North American Oil Company against William H. Forsyth, Henry Forsyth, and Jacob Forsyth, partners trading as Forsyth Brothers & Co.

The case was this:—In the month of July 1863, the plaintiffs and defendants entered into a contract, in the following terms, viz.:—

"Pittsburgh, July 16th 1863.

"Purchased of Forsyth Brothers & Co. four thousand barrels good merchantable crude oil, to be delivered in their barrels on board cars of Allegheny Valley Railroad, and paid for by us in lots as delivered, at the rate of twenty cents per gallon for the oil. The barrels to be returned.

"The oil to be pumped free from water, subject to our inspection, and gauged in the barrels; the delivery to be commenced immediately, and pursued with all due diligence until completed. The gravity of the oil to be 40 to 44 degrees. Accepted.

"FORSYTH BROTHERS & Co."

The plaintiffs' declaration contained three counts. In the first and third the substance of the above contract was stated; in the second it was given in terms, to which the defendants pleaded the following pleas:—

"And now, to wit, March 11th 1864, the said defendants, by George Shiras, Jr., their attorney, plead *non assumpserunt* as to the several assumptions and promises in the said declaration thereof declared against them.

[North American Oil Co. *v.* Forsyth Brothers & Co.]

" And for further plea, in their behalf, they say that they are ready to defend the wrong and injury, when and where, &c., and that they, the said plaintiffs, did not, as alleged in their said declaration, offer to pay for the lots of oil, the delivery whereof was demanded, and of this the said defendants put themselves upon the country, &c.

" And for further plea, in this behalf, the said defendants say, that the said plaintiffs ought not to have or maintain their said action thereof against them, because they say, that they, the said plaintiffs, did not comply with and fulfil the provisions of the contract, on the part of the said plaintiffs, to be done and performed, in this, to wit: That they did not pay for a certain large lot of oil to them delivered by the defendants on the        day of September 1863, and which, by the terms of said contract, was to be paid for on delivery, but wholly neglected and refused so to do.   And the said defendants further say, that upon the refusal and neglect of the said plaintiffs to pay for the said lot of oil, so as aforesaid delivered by the defendants to the said plaintiffs, the said defendants rescinded the said contract, as they had a right to do, in equity and good conscience, and forthwith, to wit, on the 14th day of September 1863, gave notice of the said rescission to the said plaintiffs ; and this the said defendants are ready to verify—wherefore they pray judgment, whether the said plaintiffs ought to have or maintain the said action thereof against them, &c.

" And for further plea, the said defendants say, that the said plaintiffs ought not to have or maintain their said action thereof against them, because they say, that they, the said plaintiffs, did not pay for certain lots of oil to them delivered by the defendants, under the terms of the contract between the parties, but so to do wholly neglected and refused, whereby it became the right of the said defendants to treat the said contract as rescinded ; and that the said defendants elected to treat the said contract as rescinded, and forthwith, to wit, on the 14th day of September 1863, gave notice of their said election to the said plaintiffs ; and this they are ready to verify, wherefore they pray judgment whether the said plaintiffs ought to have or maintain their said action thereof against them, &c.

" And the said defendants, for further plea, say, that the plaintiffs did not frequently demand from the said defendants the delivery of oil, according to the terms of the contract between the parties, and offer to pay therefor, as alleged in their said declaration, and of this the said defendants put themselves upon the country, &c."

After the delivery of two thousand seven hundred and ninety-four barrels, part of which was paid for, on the 10th of September 1863, four bills were presented by defendant at plaintiffs' counting-house for oil delivered on the 4th, 5th, 7th, and 9th of

[North American Oil Co. *v.* Forsyth Brothers & Co.]

September, amounting to four or five thousand dollars. These bills not being paid, on the 14th of September 1863 the following notice was served on the company:—

"Pittsburgh, September 14th 1863.
"GEORGE OGDEN, Esq., Secretary North American Oil Co.

"Dear Sir:—As you have, by your refusal to make payment when demanded, failed to comply with the conditions of our contract with you, dated July 16th last, and have thereby rescinded the same, we hereby give you notice that we shall not deliver you any more crude petroleum, under said contract.

"Yours, respectfully,
"FORSYTH BROTHERS & Co."

The bills were however paid on the same day, except one for $1038.80, which, having been overlooked, was paid on the morning of the 15th of September. On the 14th of September the balance of the oil was demanded, but to this and subsequent demands the answer was, that "the contract was rescinded, and no more oil would be delivered under it."

This suit was then brought, and as, on the 14th of September 1863, the price of oil had advanced six and a half cents per gallon beyond the contract price, the plaintiffs claimed the difference, or twelve hundred and six barrels of forty gallons each, making forty-eight thousand two hundred and forty gallons.

I. On the trial of the case the plaintiffs offered to prove that witness was employed by them to attend to the receiving and inspection of the oil under the contract, and that he did so attend to the same [and that, although during all the time from the date of the contract until after the 14th of September 1863, defendants had great abundance of crude oil at the point named in the contract, defendants from time to time neglected and procrastinated the delivery of said oil, although frequent demands of the same were made by witness on behalf of the plaintiffs, from the date of the contract until the 14th of September 1863, defendants saying from time to time that oil had risen much in price], and that after the 14th of September 1863, defendants refused, on demand made, to deliver any more oil. To be followed by other evidence showing that plaintiffs always paid for said oil on the presentation of bills, and the delivery and inspection of said oil, so far as they were able to obtain the delivery of the same from said defendants.

To which offer the defendants objected:

1st. Because it contains irrelevant matter mingled with what might be relevant testimony, in such way as to render the separation impracticable, and therefore defendants object to the whole offer as defective.

2d. Because tardiness in the delivery of the oil is not involved in the issue.

3d. That it appearing from the offer itself and from the opening of counsel, that the deliveries were made and accepted anterior to the 14th of September 1863, and then ceased, that the evidence relative to the transactions and dealings of the parties prior to that time. is irrelevant and incompetent.

4th. That the only question involved in the issue is the non-delivery of the oil, and the motives of the defendants for not delivering it, or his ability to deliver, is foreign to the issue.

PER CURIAM.—If the delaration alleges broadly the non-delivery of any oil under the contract, the plaintiffs having read the contract and shown the readiness of their inspector to attend to it on their part, and a demand and non-delivery, they may stop there. If the declaration alleges special damages by tardiness in the delivery, this ought to have been laid as a special breach of the contract. The offer was refused as marked by brackets, and the remainder admitted.

II. The plaintiffs then offered to prove that defendants had a large amount of oil greatly exceeding the amount of four thousand barrels, in their tanks at the point of delivery named in the contract, and that witness, on behalf of the plaintiffs, from time to time, demanded the delivery of the same, and that defendants could, if they had exercised due diligence, have delivered said oil, but that they neglected and refused, from time to time, so to do. This testimony to be given in evidence in connection with that embraced in the foregoing offer.

To which the defendants objected for the reasons assigned as objections to the first offer.

PER CURIAM.—So far as this offer proposes to prove a demand and refusal, it is admitted. That part in regard to the ability of defendants to perform, is rejected as irrelevant.

III. Plaintiffs' counsel asked the witness whether at different times prior to the final refusal, witness did not demand one and two car-loads of oil and receive a much less quantity than demanded, defendants at the same time refusing to deliver any more, for the purpose of showing that plaintiffs were ready and willing to comply with the contract, but that defendants were not willing to comply with theirs.

This question was objected to by defendants' counsel, on the ground that there is no allegation of tardiness or delay in making the delivery, or that the delivery was not in lots as large as required by the contract.

PER CURIAM.—So far as this offer regards the last time that any oil was delivered and a refusal, or notice given that defendants would not deliver any more, it is admitted; the other parts of it are refused.

[North American Oil Co. v. Forsyth Brothers & Co.]

IV. The plaintiffs' counsel asked the witness whether, between the 16th of July and the 14th of September 1863, the oil was furnished by the defendants in sufficient quantities to keep plaintiffs' works going, for the purpose of showing that oil in sufficient quantities was not furnished in quantity for that purpose.

Defendants' counsel objected, because the contract was not to furnish in quantities to keep the works going, and as not having a bearing on the question of damages, as damages for not keeping the works going cannot be recovered.

In the course of their defence, the defendants offered to prove that defendants delivered several lots of oil, to wit: September 4th, fifty-six barrels; September 5th, fifty-six barrels; September 7th, a hundred and sixty-nine barrels; September 9th, two hundred and twenty-eight barrels; and September 10th, a hundred and thirty barrels, making in all an aggregate of six hundred and thirty-nine barrels, and demanded payment of the same, which being refused, the contract was declared, by the defendants, rescinded, and notice thereof given to plaintiffs.

This was objected to by plaintiffs, on the ground that the offer is multifarious, indefinite, and irrelevant, and did not show whether they demanded the whole at one time or the different lots at different times.

PER CURIAM.—If the defendants forebore to demand pay for the different lots as delivered until the last above-named lot was delivered, it would not vary nor abrogate their rights to demand the whole amount together.    Testimony admitted.

The court below reserved the following questions:—

1st. Whether, under the pleadings and evidence, it is incumbent on the plaintiffs to show readiness to perform their part of the contract after the notice of rescission of 14th September served on them?

2d. Did the notice of rescission of 14th September, the plaintiffs being in arrear at the time for part of the oil already delivered, operate to discharge the defendants from any further obligation under their contract, notwithstanding the mode of performance of the contract, which had been previously pursued by the parties on both sides?

And instructed the jury as follows:—

" After the questions of law reserved in this case, there remains but little for you to pass upon.   The only questions which I will submit to you are in reference to the plaintiffs' conduct under the rescission notice of the 14th September to them, and the amount of damages.

" Having regard to the terms of the written contract of 16th July, and its subject-matter, and the mode of its performance pursued by both parties previous to 14th September, did the plaintiffs, when they received this rescission notice, use due

[North American Oil Co. *v.* Forsyth Brothers & Co.]

diligence in paying up what was then in arrear, and show by their acts and declarations that they did not acquiesce in that view of it, but regarded the contract in full force, and were willing to comply with it on their part. The legal effect of the contract of the 16th July, was that the defendants should deliver the oil in parcels, and plaintiffs should pay for it as delivered. The acts to be done on both sides were concurrent or mutual. Either party was bound to tender performance before putting the other in default. The defendants could require payment of each parcel before it left on the cars. If, in the mode of the performance, however, the defendants did not deliver as expeditiously as was desired by plaintiffs; or if plaintiffs did not pay for each parcel as delivered, but several parcels were delivered and the bills presented together; in other words, if the rigidity of the performance was departed from on either or both sides, and acquiesced in, the one party could not take advantage of past acts of the kind, to declare the contract rescinded as to the future. The legal effect of the notice of 14th September was, that if plaintiffs did not pay up arrears for oil already delivered, and thereafter pay as delivered, according to the contract, the defendants would hold themselves discharged from any further obligation to perform on their part.

"Then, under this notice, did plaintiffs manifest due diligence, and pay up in reasonable time, under the circumstances, and manifest their intention to hold to their contract and perform it in the future on their part. If so, the plaintiffs are entitled to recover. On the other hand, if the plaintiffs did not so act, but, by their conduct or declarations, exhibited a disposition from which it might be inferred they would not pay for the oil as delivered in future, or would not comply with their part of the contract, or unreasonably neglected to pay up the amount then due, or refused and delayed to pay it up after 14th September, notice served on them, then plaintiffs are not entitled to recover.

"The measure of damages is the difference between the contract price and the market price at the time it ought to have been delivered, with interest."

The jury rendered their verdict for plaintiff for $3229.67. Subsequently the court below delivered the following opinion on the points reserved:—

"It appears to me, after examining the testimony, that judgment must be entered for defendants, *non obstante veredicto*, on the first reserved point. In Robinson *v.* Tyson, not yet reported, Judge Strong uses this language: 'The averment that the plaintiff was ready and willing to receive the oil and pay for it on its delivery and shipment on the cars, was a material one and necessary to be proved. It is not said there must be direct proof that the vendor was present at the time and place appointed for the

delivery with the money in hand with which to make payment, but there must be evidence from which a jury may legitimately infer that he was then and there ready.'

"In the present case the defendants had complained of trouble in obtaining payment for the lots already delivered, and had positively refused to proceed under the contract on that account. The parties had by their acts—perhaps for mutual convenience and accommodation—relaxed, to some extent, the strict promptness of delivery and payment, or mutuality of performance which the law applies to such contracts; and while such course of performance was pursued without objection, neither party could take advantage of it, to declare the contract forfeited, as was attempted by these defendants. But their notice of forfeiture indicated to the plaintiffs plainly enough that the defendants had abandoned this relaxed course of performance, and thrown themselves on their legal rights. The plaintiffs might well infer from it that defendants would deliver no more oil until what was delivered was paid for, and a readiness on part of plaintiffs to pay at the cars on delivery was clearly shown. After this notice the plaintiffs did pay up arrears promptly, and showed a readiness to receive more, but I fail to perceive in the evidence anything from which a jury might legitimately infer readiness to pay on delivery, otherwise than as payment had theretofore been made, and this relaxed mode the defendants had abandoned on what amounted to due notice. The defendants cannot, therefore, be regarded as in default, until the plaintiffs put themselves in an attitude of readiness for a strict compliance with the requirements of the contract on their part.

"On the argument, the learned counsel for plaintiffs adduced some authorities rather impugning the extent to which the case of Robinson v. Tyson carries the necessity of proof of the averment of readiness to receive and pay under such contract, but I think that case only declares the common rule of text-books.

"True, this court was reversed for not laying it down as the rule in Robinson v. Tyson, but the question was not raised at all on the trial of that case. When the evidence was closed in that case, the court was asked among other points to say, that the plaintiffs could not recover upon the pleadings and evidence. In view of the evidence and admissions in the case, this could not be done, and we simply refused so to charge the jury. Thereupon the case went to the Supreme Court upon the loose notes of parts of the testimony which we had taken. There having been no intimation of a demurrer to evidence, it was not fully noted. And not supposing such point so put to the court would be regarded as a demurrer to evidence in the Supreme Court, especially in view of the rules of this court requiring all points on which instruction is asked to specify the particular

[North American Oil Co. *v.* Forsyth Brothers & Co.]

matter to which they allude, we did not deem it necessary to ao more than refuse this point. This may have been error, but the question of want of proof of readiness to perform on plaintiffs' part was never raised on the trial.

"I do not think anything new or extraordinary is required by the rule as expressed in Robinson *v.* Tyson, and in its application to the circumstances of the case in hand, I would not suppose a tender, or even an exhibition of an adequate amount of money necessary, but that in such case it should be shown that adequate funds were on hand or in bank ready to be checked out for the purpose. A difference exists between ability to pay and readiness to pay. Of ability and willingness to pay we think there could be no question, but we think the case deficient in proof of readiness to pay, and for that reason direct judgment to be entered for the defendants *non obstante veredicto.*"

The ruling of the court on the questions of evidence, and the entry of judgment on the reserved points, were assigned for error here.

*Thomas Mac Connell* and *Robert Woods*, for plaintiffs in error.

*George P. Hamilton* and *George Shiras, Jr.*, for defendants.

The opinion of the court was delivered by

AGNEW, J.—As we read this record the court below presented to the jury two questions of fact, to wit: Whether the plaintiffs were diligent in paying for the oil already delivered, after the notice of rescission; and whether they evinced their readiness in the future to perform their contract according to its terms.

Having stated that after a mutual departure from the rigidity of performance, neither party could declare a rescission for past acts, the court said: "The legal effect of the notice of 14th September was, that if plaintiffs did not pay up arrears for oil already delivered, *and thereafter pay as delivered according to the contract*, the defendants would hold themselves discharged from any further obligation to perform on their part." This prepared the way for the final instruction immediately following, to wit: "Then under this notice did the plaintiffs manifest due diligence, and pay up in reasonable time, under the circumstances, and *manifest their intention to hold to their contract and perform it in future on their part?* If so the plaintiffs are entitled to recover."

To manifest an intention to hold to their contract and perform it in future, in view of the preceding instruction and the alternative presented in the following sentence, can mean nothing else than to exhibit to the defendants the intention to pay for the oil in future on delivery. The alternative instruction, which is expository of the former, runs thus: "On the other hand, if the

plaintiffs did not *so* act, but by their conduct or declarations exhibited a disposition from which it might be inferred they would not *pay for the oil as delivered in future,* or would not comply with their part of the contract * * * then the plaintiffs are not entitled to recover."

There is a distinction between a willingness to pay and readiness; and the latter may be tested by the production of the money or an offer to pay it. But in this case readiness was not to be tested solely in that way. Neither a tender nor an offer to pay can be required as the legal measure of the proof of readiness in a case where the article is deliverable in lots uncertain in quantity and in time of delivery, implying notice of readiness to deliver, and where inspection of quality and measurement by gauging are prerequisites to payment. Readiness to pay in such a case necessarily falls back upon the intention to pay, as manifested by the conduct and declarations of the party. It was only by manifesting the intention to pay the plaintiffs could evidence their readiness.

The jury, under the charge, have found that the plaintiffs did manifest their intention to hold to their contract, and to perform it in future; and did not by their conduct or declarations exhibit any disposition not to pay on delivery. How else can a party show his readiness to pay upon a contract requiring no positive act at his hands until the article is ready for delivery, of which he is to be notified, unless it be by manifesting to the other party his intention to perform his contract according to its terms? If the defendants had expressly asked of the plaintiffs, on their demand for more oil, "Will you pay on delivery?" and they had said, "Yes," what would this import more than to manifest an intention to pay? From the language of the instruction, we must infer from the response of the jury, that the plaintiffs gave the defendants to understand, either by their conduct or their declarations, that they would perform their contract, in future, by payment on delivery.

It may be, as stated by the learned judge, in his opinion upon the reserved points, that there was nothing in the evidence from which readiness to pay on delivery could properly be inferred, but under his instruction this was a fact submitted, and, if improperly found, the remedy was a new trial. Had the jury been instructed that there was no sufficient evidence of readiness, as distinguishable from willingness, and the question reserved whether readiness was necessary to a recovery, in addition to willingness, the fact would have been withdrawn, and the legal necessity of its existence reserved as a question of law. But there was error in submitting the fact of readiness to the jury in language that clearly embraced it, and after the fact was found, in entering judgment for the defendants on the ground that the evidence was insufficient.

[North American Oil Co. *v.* Forsyth Brothers & Co.]

Viewing the state of the record, we cannot enter a judgment on the reserved point in favour of the plaintiffs. The court reserved a second question, whether the notice of the 14th September was not such a rescission of the contract as ended it. The readiness of the plaintiffs, after the notice, was of no avail if the contract was legally ended. But the court below, having entered judgment for the defendants on the first point, did not pass upon the second; and the second point, in its express terms, involves the mode of previous performance pursued by both parties. The effect of the notice as an absolute rescission, depended upon the previous conduct of the plaintiffs; but the court below submitted to the jury no questions of fact except " in reference to plaintiffs' conduct *under* the rescission notice," and the amount of damages. After expressly informing the jury that the only questions submitted referred to the conduct of the plaintiffs under the notice, the court declared the legal effect of the notice was, to compel the plaintiffs to pay up arrears, and to compel them to perform the contract in future according to its terms. The facts are therefore not before us by any finding which would enable us to decide the question of rescission. The only course left is to reverse the judgment of the court below, and to order a *venire facias de novo.*

It is sufficient to say, as to the errors assigned to the rejection and admission of testimony, that under the pleadings, and upon the issue as tried before the jury, we see no error in any of the rulings of the court below.

Judgment reversed, and a *venire facias de novo* awarded.

Woodward, C. J., dissented.