# The Glamorgan Iron Company *versus* Snyder.

1. Under the various Acts of Assembly which have provided for the dispositions of causes by a law judge from another district, where the proper president judge is unable to preside, it was never designed that the law judge thus called should perform his duties under the supervision and subject to the appellate control of the associate judges unlearned in the law.

2. Where, therefore, a judge learned in the law thus called into another district holds any matter under advisement, and in vacation determines the matter so held, the associate judges cannot set aside his decision and make a different one, and it differs not whether the question so held and decided arose at the regular term of the court or at the session of a special court.

3. The relations of associate judges to the court discussed and defined by WOODWARD, J.

May 28th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Common Pleas of *Mifflin county*: Of May Term 1877, No. 21.

[Glamorgan Iron Co. *v.* Snyder.]

This was an action of trespass on the case, brought by Joseph Snyder against The Glamorgan Iron Company, for damages alleged to have been sustained by plaintiff, in consequence of the negligent washing of defendant's ore whereby the land of plaintiff was over-flowed and a spring and a stream of water thereon were polluted.

The facts are sufficiently stated in the opinion of this court.

*D. W. Woods* and *George W. Elder*, for plaintiffs in error.— When a special court is held in any judicial district by the president or associate law judge of another judicial district, and matters are held under advisement and points reserved, and a motion for a new trial is left pending after the term or session, the judge so holding the special court has the power *in vacation* to determine the matters so held under advisement and send his decision in writing to the prothonotary or clerk of the court, and when his decision is entered of record, the associate judges of the county in which the court was held have no authority to set his decision aside and enter another and entirely different one *in vacation.* We further contend that the associate judges of the county have no authority whatever to enter any decree on the points reserved or the motion for a new trial *in vacation;* that this power belongs solely to the president or other law judge holding the special court: Act of Assembly of May 5th 1864, sect. 2, Pamph. L. 829, 1 Br. Purd. 232, pl. 133. It was held in Kolb's case, 4 Watts 154, that the associate judges cannot determine a motion for a new trial in the absence of a president judge.

*John A. McKee* and *Andrew Reed*, for defendants in error.— This case was tried at the regular term of the court, and not at a "special court," and the argument of plaintiff in error does not apply. The Act of 1864 is particularly limited to special courts, but this case is embraced by the provisions of the Act of April 2d 1860, Purd. Dig. 232, pl. 130, where it is provided that the president judge of one judicial district may call upon the president judge of another judicial district "to hold the regular term of the court." No case at the term was certified into a special court. It is contended that the associate judges are a proper part of the court to decide the question of granting a new trial, and with equal power with the president.

Mr. Justice WOODWARD delivered the opinion of the court, June 11th 1877.

At the January Term of the Mifflin Common Pleas in 1876, this cause was tried before Judge Junkin, President of the 41st Judicial District, in place of Judge Bucher, by whom the business of the court had been begun, but who had been called home by the death of a relative in Lewisburg. The trial resulted in a verdict in favor

[Glamorgan Iron Co. *v.* Snyder.]

of the plaintiff below for $300.   The defendants moved for a new trial, and at the succeeding term, in April 1876, the motion was argued.   On the 3d of May 1876, in vacation, an opinion was filed by Judge Junkin, embodying an order for a new trial unless the plaintiff should file, within thirty days, in the prothonotary's office, a release to the defendants of all damages to arise thereafter from the injury which had formed the foundation of the January verdict. On the 27th of May 1876, also in vacation, the associate judges of Mifflin county signed a paper in which they expressed their entire satisfaction with the verdict, overruled the motion for a new trial, and directed the entry of judgment.   This paper was entered of record, and stands as the final disposition of the cause.

For many purposes the associate judges of the several counties of the Commonwealth have formed a most useful class of public officers.   In the absence of the President Judge, their services have been almost indispensable where formal judicial action in vacation has been required in the current practice of the courts.   Wherever two or more counties have constituted a district, their local knowledge has been found to be an essential aid in adjusting questions relating to the values of property, to appointments of minor officers, to bail, and to the selection of viewers, appraisers and inquests in the Orphans' Court and Quarter Sessions.   In the minor details of the business of the Common Pleas also, president judges have been able to rely safely on their judgment, integrity and business experience.   But in the conduct of jury trials they have usually not sought to interfere, and usually their interference has not been invited.   The purely legal business of a court of original jurisdiction must be subject to the control of a single judge, if efficiency, promptitude, and official responsibility are worth maintaining.   If the deliberately formed purpose of a president judge may be thwarted and overturned by action on the part of his associates which must necessarily be ill-considered and may often be prejudiced, rules of law will be subordinated to individual caprice.   The president is the constitutional head of the court, under responsibilities to the community which a court of review can always enforce, and hedged around by duties and obligations for the performance of which no other guaranty is needed than his regard for his own professional reputation.   The fact that in Pennsylvania there has been no failure in the due discharge of those duties and obligations, is adequate proof that the exercise of supervisory and appellate jurisdiction by associate judges is, to state the conclusion in the mildest form, entirely superfluous.

All the Acts of Assembly which have provided for the disposition of causes by a law judge from another district where the proper president judge may be unable to preside, have been cases requiring the employment of trained legal experience, and that experience the legislature have assumed that associate judges do

not possess.   It certainly was never designed that the president of
the Forty-first district should be called into the Twentieth district
to perform duties within the recognised jurisdiction of the associate
judges of Mifflin county.   Nor was it designed that the president
judge thus called should perform his duties under the scrutiny and
supervision and subject to the appellate control of those associates.
The Act of the 4th of April 1834 authorized special courts to be
held by the nearest resident president judge, whenever the presi-
dent judge of any court should be personally interested; whenever
the·title of any party should have been derived from him; when-
ever any near relative should be interested; and whenever he
should have been counsel for either party in any suit or in any
other action touching the same subject-matter.   By the 1st section
of the Act of the 10th of April 1849, it was made lawful for the
president judge of a county where a special court was required, to
hold the courts of the adjoining district in place of the president
judge holding the special court.   By the 2d section of the same
act it was provided that, if the despatch of business should require
it, the judge whose place was supplied might take the place of the
other judge at any regular term or at any adjourned court, and
that all proceedings had should have the same force and effect as
if the same had occurred before the proper president of the district.
The Act of the 22d of April 1856 directed that any cause, prose-
cution or proceeding, in which any president judge should be
interested, should be tried and heard before the nearest disinte-
rested president judge.   The Act of the 2d of April 1860 per-
mitted a president judge who should be unable to hold the regular
term of the courts in any county, to call on any other president
judge in the Commonwealth to supply his place.   With the law
thus established by these enactments, the Act of the 5th of May
1864 was passed.   The 2d section provided : " For the purpose of
expediting and furthering the business of special courts holden by
any president, district or associate judge, where matters shall be
held under advisement by him, or points reserved, and when mo-
tions for a new trial and in arrest of judgment, and other questions,
shall be left pending after the termination of the term or session,
the judge so holding the said special court shall have power, in
vacation, to determine the matters so held under advisement,
reserved and left pending, and to send his decision in writing to
the prothonotary or clerk of the court, as the case may be (with
his reasons, if he deem it necessary), to be filed of record in the
cause, either in vacation or in term-time, with the same effect as
if decided and entered in term-time."   All these statutes are *in
pari materia,* and are to be construed as parts of a system designed
to be general and symmetrical.   The spirit and reason, the subject-
matter, and the effects and consequences of the Act of 1864, require
it to be so applied as to embrace not only the courts authorized by

[Glamorgan Iron Co. v. Snyder.]

the Act of 1834, but those authorized by the Acts of 1849, 1856, and 1860. However varied the earlier statutory language, and however limited the scope of the 1st section may have been, the legislature had no other end in view, in the 2d section of the Act of 1864, than to regulate the practice in all the cases in which law judges should hold courts out of their respective districts, and in all cases those courts were included in the designation in that section of "special courts." This is clearly shown by the phraseology employed. The power conferred was extended to "any president, district or associate judge." The questions to be decided in vacation were those "left pending after the termination of the term or session"—the regular "term" on the one hand, and the "session" of the special court on the other.

Judge Junkin's order of the 3d of May 1876, was in due exercise of statutory authority, and was a final and binding determination of the subject of the controversy, which could not be legally disturbed except by the supplementary action of the Common Pleas on a formal application in open court. The step taken by the associate judges was wholly unwarranted. In no case has authority been conferred on them to enter a final judgment by their fiat in vacation. It is extremely doubtful, indeed, whether even in a court held by them alone, they would be justified in interfering, without the consent of the parties, with a record made up in a cause where the necessity for a special court had been once judicially ascertained. Kolb's Case, 4 Watts 154, was an application to the judges of the Common Pleas of the county of York to hear and determine a motion for a new trial in a case where the president before his appointment had been concerned as counsel. The fact that he had been thus concerned was necessarily treated as an adequate answer to the application on his behalf. The answer of the associate judges alleged their legal incapacity to act. Their refusal was sustained, and the motion was denied on the ground that the case was within the clear letter, spirit and meaning of the Act of Assembly relating to special courts. A practice based on a recognition of the right of judges unlearned in the law to interpose in questions so delicate and complicated as that out of which this controversy has grown, would encourage unseemly conflicts, subvert all wholesome discipline in the administration of the law, and produce every variety of disorder and disaster.

The order made on the 27th of May 1876, by George Weiler and A. Troxel, Associate Judges of the Court of Common Pleas of the county of Mifflin, overruling the motion for a new trial and directing judgment to be entered on the verdict, is reversed and wholly set aside.