# Commonwealth *v.* John Collom, Appellant.

*Criminal law—Jurisdiction—Due process of law.*

Any infliction of criminal punishment upon an individual except in pursuance of the law of the land is a wrong done to the state, whether the individual consents or not. Consent cannot give jurisdiction.

*Criminal law—Provisions for holding special court where president judge is disqualified by interest.*

The act of April 14, 1834, P. L. 333, provides for special courts of common pleas whenever the president judge is disqualified, but provides that parties may agree in writing that the case may be tried before him, or before him and one or more of his associates, or before the associate judges. The provisions of this act are extended by the act of April 4, 1843, P. L. 131, to cases in the orphans' court, quarter sessions and oyer and terminer; but consent, even if regularly filed, does not validate a criminal trial before the associates and a member of the bar.

*Criminal law—Jurisdiction—Associate judges—Amicus curiæ.*

Associate judges cannot call a member of the bar as amicus curiæ to the bench to advise them how to conduct a trial and how to decide questions of law that may arise, and thus take the place of the law judge.

A criminal case is not tried by due process of law where the associate justices undertake to hold a session of oyer and terminer in the absence of the president judge or a law judge, and where, with consent of counsel, a member of the bar has been called to the bench to advise them as to matters of law as an amicus curiæ.

Argued March 18, 1896. Appeal, No. 77, March T., 1896, by defendant, from judgment of O. &. T. Jefferson Co., December Session, 1895, No. 6, on verdict and sentence. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Indictment for burglary, larceny and receiving stolen goods. Verdict of guilty and sentence thereon.

It appeared from the record that:

On the 15th day of May, 1895, the defendants, John Collom et. al., were indicted in the court of quarter session of Jefferson county, to No. 24, May session, 1895, charged with three counts in an indictment. First count, burglary; second count, larceny; third count, receiving stolen goods.

That when second case was called for trial on Dec. 16, 1895,

the Hon. J. W. REED, president judge of said county, was on the bench, and having been of counsel for the defendants before his elevation to the bench he withdrew therefrom.

Whereupon the associates called W. P. Jenks, a member of the bar, to the bench to act as amicus curiæ.

The trial was then proceeded in under the direction of said court with the two associates and said W. P. Jenks.

The defendants were convicted and sentenced to the Allegheny County work house for one year.

A special allowance having been obtained the case is brought here on appeal, asking for the discharge of said defendant on the ground that no court of competent jurisdiction heard and decided the case.

*Errors assigned* were: (1) That no court of criminal jurisdiction was legally constituted in the trial, conviction and sentencing the said John Collom and Elijah Goodyear.

(2) That W. P. Jenks, with the two associate judges, had no authority to act as a court of quarter sessions in and for the county of Jefferson, the said W. P. Jenks not being a judge in commission in any district of the commonwealth.

(3) That the two associates, Henry Truman and E. B. Henderson, with W. P. Jenks as amicus curiæ, had no jurisdiction as a court over the defendants, and no authority to set as a court of criminal jurisdiction for the trial and passing sentence upon the defendants.

*J. C. Horton, A. L. Cole* with him, for appellant:—There was no legally organized court sitting at the trial of this case. Constitution of 1874, art. 5, sec. 9. Even if counsel for the prisoner had consented to such trial such consent would not have been material: Mills v. Com., 13 Pa. 627.

*N. L. Strong,* district attorney, *Edward A. Carmalt* and *W. L. McCracken,* for appellee, filed no paper-books.

PER CURIAM, April 20, 1896:

The indictment upon which the defendant was tried, convicted and sentenced was found in the quarter sessions and certified to the oyer and terminer. It contained three counts,

the first charging burglary, the second larceny, and the third receiving stolen goods, etc. The defendant was convicted and sentenced on the second count.

The record shows that the president judge, having been counsel for the defendant, retired from the bench, and that the associate judges, "having the HON. WILLIAM P. JENKS, a member of the bar of Jefferson county, as amicus curiæ to advise them as to matters of law," proceeded to try the case.

The 58th section of the act of April 14, 1834 (P. L. 352), provides that it shall be the duty of the president judge of the court of common pleas, with the associate judges or one of them, to hold the court of oyer and terminer. Other legislation and the constitution of 1874 have conferred the same powers upon the other law judges of the district. The associate judges not learned in the law, or either of them, may open the court and adjourn the same to such day as a quorum of the court can attend, but it is very clear that where the record shows that the president judge is disqualified to sit in the trial of a case by reason of his having been counsel, and the parties do not consent, the associate judges not learned in the law have no authority to try the indictment. Whether written consent filed of record would give them such authority is a question which is not fairly raised by the record in this case.

There is another objection which applies also to a case tried in the quarter sessions at the same term. The record in the latter case reads as follows: " HON. JOHN W. REED, P. J., having been counsel for defendants, by consent of counsel for Com. and def'ts the case is tried before the two associates, who called the HON. WILLIAM P. JENKS to the bench as amicus curiæ."

Any infliction of criminal punishment upon an individual except in pursuance of the law of the land is a wrong done to the state, whether the individual assented or not. Consent is sometimes implied from failure to object; but there can be no waiver of rights by laches in a case where consent would be altogether nugatory. "If," says Judge COOLEY, "the parties cannot confer jurisdiction upon a court by consent, neither can they by consent empower any individual other than the judge of the court to exercise its powers. Judges are chosen in such manner as shall be provided by law; and a stipulation by par-

ties that any other person than the judge shall exercise his
functions in their case would be nugatory, even though the
judge should vacate his seat for the purposes of the hearing: "
Cooley's Const. Lim. 492, citing Winchester v. Ayres, 4 Greene
(Iowa), 104. We have taken some pains to examine what
little there is in the books concerning the functions of an ami-
cus curiæ. The curious will find the subject discussed in an
interesting manner in 11 Pitts. L. J. (1864) 321.

That term in its ordinary use implies the friendly interven-
tion of counsel to remind the court of some matter of law
which has escaped its notice and in regard to which it appears
to be in danger of going wrong. It is not ordinarily the func-
tion of the amicus curiæ to take upon himself the manage-
ment of a cause as counsel: Taft v. Transportation Co., 56
N. H. 414; Anderson's Law Dict., nor, we may add, as judge.
Some writers say that he may make suggestion of any matters,
whether of law or fact: Abbot's L. Dict.; Black's L. Dict.
We also find cases which, coming before the court ex parte,
have been argued by counsel not interested as amici curiæ:
Ex parte, Yeager, 11 Grat. (Va.) 656. But this is quite a
different thing from calling a member of the bar to the bench
because the judges being unlearned in the law, do not think
themselves qualified to rule upon the questions of law that
may arise. No definition of the functions of an amicus curiæ
that we have been able to find, or that can be sustained by any
authoritative decision that has come to our notice, is broad
enough to warrant such delegation of judicial power. A judge
cannot leave his seat upon the bench and designate a member
of the bar, however learned, to take his place; neither can the
associates call a member of the bar to the bench to advise
them how to conduct the trial and how to decide the questions
of law that may arise, and thus virtually take the place of the
law judge. To designate such a person as amicus curiæ does
not alter the case; it is a misuse of the term. It does not dis-
guise the fact that he was called to the bench to exercise
judicial functions; and it makes little difference whether he
announced the rulings which he advised the judges to make
or whether they announced them.

The proceedings do not have even the plea of necessity in
their favor. The law has made ample provision for the trial

of cases in which the law judge of the district is disqualified from acting, and which the associate judges do not find themselves qualified to try. The act of April 14, 1834, P. L. 333, provides that special courts of common pleas shall be held whenever the president judge shall have been concerned as an attorney or counsel for either party in any suit depending therein; but the parties may agree "in writing to be filed of record to a trial before such president or before him or any one or more of his associates or before the associates." These provisions were extended to all cases in the orphans' court, oyer and terminer or the quarter sessions, by act of April 4, 1843, P. L. 131. "It is extremely doubtful indeed," says Justice WOODWARD, "whether even in a court held by them" (the associates) "alone, they would be justified in interfering without the consent of the parties with a record made up in a cause where the necessity for a special court had been once judicially ascertained:" Glamorgan Iron Co. v. Snyder, 84 Pa. 397, citing Kolb's case, 4 W. 154. See also Korman's Application, 162 Pa. 151. The record in the quarter sessions shows consent of counsel to try the case before the associates, but whether it was in writing and filed of record does not appear in the paper-book. Conceding that it was, the record does not show consent to a trial before the two associates and a member of the bar designated by them, and such consent would be nugatory even if it affirmatively appeared.

To sustain the conviction in either of these cases would establish a most dangerous precedent, and give color of authority for a practice which would be entirely inconsistent with our laws.

Conceding everything that may be urged in favor of the fairness of the trial, and of the ability of the learned gentleman whom the associates called to the bench, the fatal objection is, that a court constituted as this was is not legally constituted, and a conviction had before such a tribunal is not "by due process of law" or "the law of the land."

Judgment reversed and venire facias de novo awarded.