# David M. Butts, Exr. of Ruth B. Armor, Appellant, *v.* Munro Armor et al.

*Will—Issue devisavit vel non—Judgment non obstante veredicto—New trial—Practice, C. P.*

On the trial of an issue devisavit vel non where the court submits the contradictory evidence of a fact to the jury, and the jury has found the fact, the court cannot, on a point reserved, enter judgment non obstante veredicto, on the ground that the facts did not warrant the inference drawn from them by the jury. In such a case judgment should be entered upon the verdict, or the party aggrieved left to the remedy of a new trial.

*Issue devisavit vel non—Testamentary capacity—Undue influence—Verdict.*

On the trial of an issue devisavit vel non where both the question of testamentary capacity and undue influence were involved, the jury were instructed that if they found for defendants they should state whether they found that the decedent "was not of sound mind and memory, or that she was acting under undue influence." The verdict was for defendants, and that decedent was not of sound mind; but nothing was said as to the question of undue influence. The court subsequently entered judgment non obstante veredicto on the reserved question "whether there is any evidence on which defendants are entitled to recover?" *Held*, to be error, as the reserved point and the judgment upon it did not embrace the issue.

*Definition of court.*

The court is a tribunal established for the public administration of justice, and composed of one or more judges who sit for that purpose at fixed times and places attended by proper officers.

*Court—Associate judges—Judgment after adjournment.*

Where a court is composed of more than one judge, one of the judges cannot, after the adjournment of the court, and without consultation with his associate or associates, enter a valid judgment.

What is ordered and adjudged by the court, not merely what is entered, constitutes the judgment.

Argued April 20, 1894. Appeals, Nos. 452 and 453, Jan. T., 1894, by plaintiff, from judgment of C. P. Centre Co., Aug. T., 1893, No. 214, on verdict for defendants, and from O. C. Centre Co., No. 5955. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Issue devisavit vel non. Before FURST, P. J.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were decrees entered by associate judges recited in opinion of Supreme Court, quoting them.

*James A. Beaver, John M. Dale* with him, for appellant.— The evidence was insufficient to submit to the jury : Van Alst v. Hunter, 5 Johns. Ch. 148 ; Wilson v. Mitchell, 101 Pa. 495 ; Yardley v. Cuthbertson, 108 Pa. 395 ; Eddey's Ap., 109 Pa. 407 ; Pensyl's Est., 157 Pa. 465 ; Miller v. Oestrich, 157 Pa. 264.

A decision of the associate judges upon a point of law, either in the course of a trial or at the end of a trial, when the court charged the jury, would lead to endless confusion and an absolute miscarriage of justice. How much more is this true in a case of this kind, where legal learning, legal mind and legal conscience are all involved : Kolb's Case, 4 Watts, 154 ; Glamorgan Iron Co. v. Snyder, 84 Pa. 397.

*Samuel Gustine Thompson, C. M. Bower* and *Ellis L. Orvis* with him, for appellees.—The reserved point states no point of law, and is therefore bad ; it reserves the very fact it submits : Wilson v. Steamboat Tuscarora, 25 Pa. 317 ; Henry v. Heilman, 114 Pa. 499 ; Winchester v. Bennett, 54 Pa. 510 ; Wilde v. Trainor, 59 Pa. 439 ; Com. v. McDowell, 86 Pa. 377.

The action of the president judge, in directing judgment for plaintiff non obstante veredicto, was error :

First. Because, when he submitted the facts of testamentary capacity and undue influence to the jury, his judicial function was exhausted. "But there was error in submitting the fact of readiness to the jury in language that clearly embraced

it; and, after the fact was found, in entering judgment for the defendant on the ground that the evidence was insufficient: " Oil Co. v. Forsyth Bros. & Co., 48 Pa. 291; Patton v. R. R., 96 Pa. 169.

Second. Because no question of law had been distinctly stated, and properly reserved: Henry v. Heilman Bros., 114 Pa. 501; Wilson v. Steamboat Tuscarora, 25 Pa. 317 ; Irwin v. Wickersham, 25 Pa. 316; Buckley v. Duff, 111 Pa. 223; Printing & Publishing Co. v. Rice, 106 Pa. 623.

Third. Because the attempted judgment had no verdict to support it: Robinson v. Myers, 67 Pa. 9; Morris v. Ziegler, 71 Pa. 450; Glading v. Frick, 88 Pa. 461.

Fourth. Because the court's proper and only remedy, if the verdict was unsatisfactory, was in granting a new trial. After the verdict, appellant obtained from Judge METZGER a rule to show cause why a new trial should not be granted, but this rule was entirely overlooked by the learned judge while sparring for position: Oil Co. v. Forsyth Bros. & Co., 48 Pa. 291.

Fifth. Because the verdict is supported by the evidence of the defendant's witnesses, if believed; and the learned judge should have found the weight of the testimony in favor of the defendants.

The associate judges have co-ordinate power with the president judge : Van Vliet v. Conrad, 95 Pa. 494; Com. v. Kryder, 1 Penny. 143 ; Reiber v. Bofs, 110 Pa. 594; Leister's Ap., 20 W. N. 224; Hamlin v. Peck, 135 Pa. 493; Const. of 1790, art. 5, § 5; act of April 14, 1834, §§ 20, 43, P. L. 344; Const. of 1838, art. 5, § 3 ; Const. of 1874, art. 5, §§ 4, 5 ; Richardson v. Stewart, 2 S. & R. 85 ; Smith v. Com., 54 Pa. 211 ; O'Mara v. Com., 75 Pa. 424 ; Lewistown Road, 84 Pa. 410 ; Lieb v. Com., 9 Watts, 218 ; Com. v. Dumbauld, 97 Pa. 295.

We deny that Judge FURST sat as a chancellor; the three judges sat as a court of chancery. The present constitution expressly vests chancery powers in the court of common pleas. Had he been sitting in the absence of his associates, it would have been otherwise, but a full court sat, both at the trial and at the argument on the rule for new trial, and for judgment non obstante veredicto. The two associates, sitting as judges, had the constitutional power to act as judges.

The same law that places these associates on the bench of the common pleas, places them in the orphans' court and clothes them with powers equal to those of the president: Buckalew, Const. 148 ; O'Mara v. Com., 75 Pa. 424.

The associates have the undoubted right to file an additional decree if deemed necessary by them to more fully illustrate their position : Leister's Ap., 20 W. N. 224.

OPINION BY MR. JUSTICE DEAN, Oct. 1, 1894 :

These appeals were argued from one paper-book. They are so woven together in the proceedings in the court below, that the questions in dispute will be disposed of in one opinion.

Personal imputations on the motives of a judge, who has rendered an adverse judgment, alleged to be erroneous, add nothing to the force of counsel's argument ; they often tend to render obscure meritorious objections, and afford us no help in passing on the real contention.   Our judgments must be founded on something of more substance than suspected motives.

A brief statement of the material facts, as gathered from this record, will largely aid in an intelligent judgment.

On February 20, 1890, Ruth B. Armor, the testatrix, being then about ninety years of age, made her will.   She was possessed of a very considerable estate, which she divided among her five children, one of whom, a daughter, Eliza, was married to David M. Butts.   The shares of all, except Mrs. Butts, were bequeathed to David M. Butts as trustee ; he was also appointed sole executor.   In less than a year after the execution of the will, the testatrix died.   The legatees, except Mrs. Butts, contested the will, on the ground that the testatrix was of unsound mind at the date of its execution, and that she had been induced to make it by the undue influence of her son-in-law, D. M. Butts.   Much testimony was taken, and, after due consideration, the orphans' court directed an issue to be tried in the common pleas, to determine whether the testatrix was possessed of sufficient mental capacity to execute the will, but refused an issue to determine whether it had been procured by undue influence.   From so much of the decree as refused an issue on the question of undue influence, the contestants appealed to this court [Armor's Estate, 154 Pa. 517].   We, being of opinion that the court erred in refusing an issue on the second ques-

tion, directed that an issue be awarded as to both, which was accordingly done, and the case came on for trial in the common pleas September 4, 1893. The judges on the bench were president judge A. O. FURST, and his associates, Thomas F. Riley and C. A. Faulkner. Many witnesses testified as to the mental capacity of testatrix, and to facts bearing on the averment of undue influence. The trial lasted four days. The evidence on both questions was submitted to the jury, who were instructed, if they found for defendants, to specify in their verdict whether the testatrix was not of sound mind, or whether the will was made when she was under undue influence. The jury found a verdict for defendants, and further found that Mrs. Ruth B. Armor was not of sound mind.

At the close of the testimony, the court made the following reservation: "Whether there is any evidence upon which defendants are entitled to recover." The verdict was recorded September 4, 1893, and on the 11th, on motion of plaintiff's counsel, a rule for a new trial was awarded, reasons to be filed within ten days; same day, on motion of same counsel, rule was awarded upon defendants to show cause why judgment should not be entered on verdict for plaintiffs, non obstante veredicto, on point reserved. On September 16th following, reasons for a new trial were filed. On October 13, 1893, in vacation, without consultation with his associates, Judge FURST, in an opinion filed, entered judgment on the point reserved for the plaintiff. On October 19, 1893, Judges Riley and Faulkner, without consultation with Judge FURST, filed an opinion overruling the judgment on the reserved point entered by him, and directed judgment to be entered thereon for defendants, and further directed the prothonotary to certify this judgment to the orphans' court. Then, on October 30, 1893, Judge FURST filed a supplementary opinion, in which he makes the following decree: "We hold the rule as matter of law, that the evidence in the cause on part of contestants is wholly insufficient in law to submit to the jury upon either issue, and we further hold, upon all the evidence in the cause, that the evidence is insufficient to sustain a verdict against the will of Ruth B. Armor, deceased. And we therefore, in accordance therewith, modify our former judgment entered on the 13th of October instant, and in lieu thereof, and as a substitute there-

for, we set aside the verdict, and we further direct that the clerk of the court enter this judgment and decree of record, vacating decree heretofore made by said court for a feigned issue to determine the validity of the will of Ruth B. Armor, deceased."

This decree the prothonotary of the common pleas was directed to certify to the orphans' court, which, on being done, Judge FURST, as president judge of that court, made this decree : " And now, October 30, 1893, the court of common pleas having certified to us upon the trial of said issue, heretofore awarded by the president judge of this court, that the evidence upon the trial thereof was wholly insufficient in law to submit to the jury upon either issue, and that, under all the evidence, no verdict against the will can be sustained ; and thereupon, having certified to us their opinion with the request that we vacate said order for an issue, we do now, in accordance therewith, vacate and annul our former order and decree, awarding an issue devisavit vel non, and the same is hereby vacated and set aside, and the clerk is directed to certify this decree to the prothonotary, to be entered by him in the record of said suit, and issue is refused."

Then, on February 22, 1894, the associate judges, by formal decree, with reasons therefor, overruled the last decree of the president judge.

The appeals raise this question : Whether the decrees and judgments of the president judge, or those of his associates, are the judgments of the court?

It will be noticed we have but one verdict, but upon it are entered four judgments, practically, two sustaining the will and two against it. They cannot all be affirmed ; whether any one of them can be is the question we are forced to consider. It is a rare record in the judicial observation of this court ; so rare that we recall no other case resembling it.

The personal antipathies engendered by litigation between the members of this family seem to have promoted hopeless discord in the tribunal appointed by law to settle strife. The court apparently resolved itself into a sort of debating society, each member maintaining his side of the question by an opinion filed of record, with the not unusual result of this kind of debate, the further it proceeded the more remote was the end

of it ; this was probably interesting to the debaters, but whether
the suitors, who foot the bill, have the same measure of enjoy-
ment out of it is at least doubtful.    Section 11 of our Bill of
Rights suggests a course of conduct in litigation which should
be present in the minds of those who hold judicial station in
this commonwealth.    That section says : " All courts shall be
open, and every man, for an injury done him in his lands, goods,
person or reputation, shall have remedy by due course of law,
and right and justice administered without sale, denial or de-
lay."    The real interests of the parties to this contention would
have been best promoted by a final judgment in the court be-
low, without delay.    Each party wanted a judgment ; neither
was specially concerned in the reasons for it ; the judges seem
to have been specially interested in their rights and reasons,
and less in a speedy judgment.    It was the judgment of this
court, on the evidence presented when the case was here be-
fore, that a jury should pass on the questions of testamentary
capacity and undue influence.    If the evidence at the trial was
the same, or substantially the same, it was then for the court
below to carry our judgment into effect, not grudgingly, but
with that fairness and impartiality which, in the performance
of a plain duty, becomes a tribunal intrusted with the judicial
administration of justice.

The first noticeable error appearing on this record, is the point
reserved, when viewed in connection with the evidence and
charge.    In the commencement of these proceedings, before
the first trial in this court, the president judge was of the opin-
ion that there was evidence for the consideration of a jury as
to testamentary capacity, and he awarded an issue to try that
disputed fact ; but he refused an issue on the question of undue
influence, and on that refusal was based the first appeal.    On
review here, we concurred with him as to the issue awarded,
but thought the evidence on both questions so blended, that
the issue should be directed for trial of both.    The question
then, as to testamentary capacity, went before the jury, from
the judgment of the court below and of this court, on the
preliminary evidence.    After a full trial in presence of the
court and jury, with every opportunity of cross-examination
and judgment of credibility from appearance and manner of
witnesses, the court submitted the evidence on this instruction :

" The witnesses on part of the contestants, testified, generally, that Mrs. Armor not only was a very old woman, but that for years and years she seemed to have lived within herself; that she would sit quietly and converse but little, and that it was only when her attention was called directly by conversation, that they could interest her in it. But these same witnesses all testified, with perhaps one or two slight exceptions, that when they did call her attention directly to any matter, the answers were rational; and when they gave her answers on the stand, they were seen to be so. I do not recollect any irrational expression, proven by any witness in this case, that Mrs. Armor made. If there were any, you must recall them from the testimony; but the court recollects of no irrational remark that Mrs. Armor made, as detailed by any witness in the case. They also described her physical condition; that she would wave her hands; that she would talk to herself; and that she would drum on the window. They also described her conduct in the garden, and that she did once cut off the cabbage in September; and when her attention was called to it, she did not deny it, but made some slight remark to the effect that it didn't matter much. Now, whether that was an act showing imbecility of mind or mental disease, or a pre-occupied mind, or whether it showed a little spirit of mischief or vandalism, would be for the jury to determine under all the facts in the case. She did not justify the act when her attention was called to it, and just why that act was done, we cannot aid you in ascertaining. You are to determine it as far as it is a fact, in connection with the other facts in this case."

The evidence of incapacity adverted to here, is not nearly all the evidence adduced by contestants; there was evidence tending to show that this old lady had become as a little child; collected and played with bright colored pieces of paper; cared only for the plays of little children; had no choice as to food; would escape into the garden, and there act like a mischievous child, destroying the growing vegetables as well as her clothes; that her memory was almost wholly gone. What was noticed by the learned judge, was called to the attention of the jury, and they were instructed that they were to determine the question in connection with the other facts in the case. It is true, there was much evidence tending to contra-

dict this evidence of contestants, and, certainly, the learned
judge did not permit the jury to forget it, for he brought it
specially to their notice, and did not neglect to emphatically
express his opinion as to its force. Nevertheless, the jury
found a verdict for defendants, on the ground that the testa-
trix was not of sound and disposing mind and memory at the
time she executed the will. Then, on the reserved point, the
learned president judge in vacation entered judgment for plain-
tiff, notwithstanding the verdict, on the ground that the in-
ference of incapacity was not warranted from the facts alleged
to be proven. This was precisely the error for which this court
reversed the court below in North American Oil Co. v. Forsyth,
48 Pa. 291. The court there submitted the contradictory evi-
dence of a fact to the jury, and after the jury found the fact, on
a point reserved, entered judgment non obstante veredicto, on
the ground that the facts did not warrant the inference drawn
from them by the jury. This Court says: " It may be, as
stated by the learned judge in his opinion upon the reserved
points, that there was nothing in the evidence from which
readiness to pay on delivery could properly be inferred, but
under his instruction, this was a fact submitted, and if improp-
erly found, the remedy was a new trial."

The learned judge, in his opinion in this case, does not at-
tempt to show that the inference of unsound mind might not
have been drawn from some of the facts, if proven to the satis-
faction of the jury, but. his opinion is, that, in view of all the
facts, and the evidence of plaintiff, such inference was not war-
ranted. At the very most, his opinion only shows that, from
the weight of the evidence, the jury ought to have found a
different verdict.

His answer is not responsive to his point reserved. That is,
" whether there is any evidence on which defendants are en-
titled to recover ? " The answer is, that the evidence was in-
sufficient to warrant the jury in inferring that the testatrix was
lacking in testamentary capacity. Whether warranted or un-
warranted, the jury believed defendants' witnesses, and, on the
facts testified to by them, drew the inference, which the court
instructed them they might draw, if they thought it was war-
ranted. The court cannot now draw an opposite one, and neg-

ative the verdict. It can only set the verdict aside if it be against the weight of the evidence.

But the judgment on the reserved point necessarily involves another error. The evidence on both questions, that of mental capacity and undue influence, was submitted to the jury, and at the close of the charge they were instructed thus: " And in drawing out your verdict, if you say you find for the defendants, then write out in full what you mean by that, whether you find she was not of sound mind and memory, or that she was acting under undue influence." The verdict was for defendants, and that she was not of sound mind. But not a word is said as to the question of undue influence. It is assumed, the silence of the jury is a finding for plaintiff. This may or may not have been the case; there is nothing in the charge; or upon the record, to show that the jury passed on that question; the probability is they did not. They were instructed to find generally, and then, if for defendants, state one or other of the grounds in support of the finding, but not instructed to return their findings on both grounds. It is not an unwarranted assumption that the jury, when they retired to deliberate, in considering the testimony as to mental capacity, found for defendants ; in the absence of instructions to return findings on both questions, they went no further, and at once made up their verdict. In so doing, they literally obeyed the instructions of the court. If this was the case, then the reserved point, and the judgment upon it, did not embrace the issue, and for that reason the judgment entered by the learned president judge could not be sustained.

But, for reasons affecting all the judgments, both those entered by the president judge, and by his associates, none of them can stand. This trial was had in a court of common pleas composed of three judges, the president and two associates. All were present on the bench during the trial. It is not necessary to discuss their powers and functions as individual members of the court at the trial. It is not going too far to assume that there was consultation of the court at the close of the evidence, its weight and significance discussed, and that the charge, which submitted it to the consideration of the jury, was the charge of the court, and not the charge of a single member of it. After the rendition of the verdict, the record

does not show that the same court entered a single one of the four judgments, or ever met for that purpose.

A court is a "tribunal established for the public administration of justice, and composed of one or more judges, who sit for that purpose at fixed times and places, attended by proper officers:" Burrill's Law Dictionary; Mason v. Woerner, 18 Mo. 570. Section 4, article v, of the constitution, declares, that, "Until otherwise directed by law, the courts of common pleas shall continue as at present established."

Section 5: "The office of associate judge not learned in the law is abolished in counties forming separate districts." Centre county does not form a separate district, therefore the courts are constituted by the act of 1834: "The president and associate judges of the court of common pleas, or any two of them, or the president judge in the absence of his associates, shall have power to hold the said courts, and to hold and determine all causes, matters and things cognizable therein according to the constitution, usages and laws of this commonwealth." The court which took cognizance of this cause at the trial, was composed of the three judges, the president and two associates, and they sat at the time and place appointed by law for that purpose. Then, after adjournment, they commenced to act, not as a court in consultation over a grave question involving both fact and law, but as individuals. Without consultation with the associates, the president judge proceeded to his home, and there determined, there was no evidence of mental incapacity to submit to the jury, although, presumptively, the court composed of himself and the associates, had agreed there was such evidence, and so charged the jury. Then, without consultation with the associates, he filed in vacation this opinion as the judgment of the court.

The two associates, thereupon, at no court of which the president judge was a member, and without consultation with him, overruled this judgment, and filed one to the contrary. And so, this antagonistic action between members of the same court, not sitting as a court or in consultation as a court, went on. It is not to the point, to argue that, under the law of 1834, any two members of the common pleas, or the president judge in the absence of his associates, had power to hold the said courts, and therefore the judgments entered by the president judge,

or those entered by the two associates, were legally entered. After hearing a cause, opinions of the individual members of a court, no matter how diverse, may be expressed to and urged upon each other, as reasons in vindication of a proposed judgment, and the opinion of one may be adopted as that of the court, and judgment be entered accordingly. But if, after hearing, the members of the court, without consultation, deliberation or decision, separate, and each one commences to file of record his individual opinion and conclusion, however valuable these may be as law literature, they are not judgments of a court. "What is ordered and adjudged by the court, not merely what is entered, constitutes the judgment:" Freeman on Judgments, sec. 38.

There never was, so far as this record shows, a common pleas court held by the president in the absence of his associates, at which his judgment, as the act of the court, was made up or entered; there never was a common pleas court held by the two associates in the absence of the president, for the adjudication of questions arising out of this trial. There was a special court held, for the trial of special causes, at which the president judge of another district presided, and the two associates sat with him. But this was not, in any reasonable intent of the act, a court of common pleas, at which two of the judges in the absence of the president judge, could take up and dispose of a question growing out of a former trial at which all three sat.

We have no doubt that it is not only convenient, but entirely regular and lawful, for the members of a court, or a majority of them, to concur in a judgment during their sitting, and then confide the expression of opinion to the president to be filed in vacation as the judgment of the court. Or the preparation of the opinion may be made by one judge in vacation, to be filed at the next sitting of the court, and the other members may then concur, although they did not know of the reasons or the judgment, until it was about to be filed. But this is the judgment of the court, because entered by the court. But not one of these judgments was entered by the court of common pleas; they were only the individual opinions of the members of that court, and all of them, as judgments, must for that reason be set aside.

This leaves the only motion which goes to the merits of this

case standing untouched.   The plaintiff's counsel, on 11th of September, 1893, three days after the verdict, moved for a new trial, and afterwards filed reasons therefor.   The judges, in the heat of the controversy on the reserved point, and over their respective rights as members of the court, seem to have forgotten this important move in the cause.   It has been allowed to sleep now for more than a year.   The proper course for the parties to pursue, if they are disposed to still further litigation, is to properly bring this motion before the court of common pleas, and argue it.   As no one doubts that the same judges who sat at the trial compose the court to hear and decide this motion, when they do so, a new trial can be ordered or final judgment entered in the court below.

The judgments entered in common pleas October 13th, 1893, October 19th, 1893, October 30th, 1893, and the decree of the orphans' court of October 30th, 1893, annulling and vacating the issue directed to the common pleas; and the judgment entered in common pleas, 22d of Feburary, 1894, are reversed and set aside, at costs of appellees in each judgment appealed from respectively.