## Huntingdon County Line. Huntingdon County's Appeal. Mifflin County's Appeal.

*Practice, Q. S.—Determination of county line—Statutes—Jurisdiction, Q. S., approving commissioners' report.*

Commissioners, appointed under the Acts of April 16, 1876, P. L. 42, and May 22, 1895, P. L. 98, to designate, survey and mark the boundary line, as established by law, between two counties, are required to file copies of their report in the courts of each county when and if such report is "approved" by each court, it is to be recorded.

The use of the word "approve" does not deprive the courts of the judicial power to hear and determine before exercising their judicial power and discretion either to approve or not. Approval by the court is a judicial act implying necessarily, concurrence to some degree at least and concurrence, when applied to judicial action, is not a matter enforceable by legislative enactment.

*Judicial discretion—Certiorari—Appeals—Jurisdiction, Superior Court —County line disputes.*

Where the action of the commissioners, to define county lines, is apparently regular and in conformity with law and an allegation that the line as run and returned by them is not the actual boundary line, depends upon

extraneous evidence, the determination of the disputed questions of fact by the quarter sessions is not the proper subject of an assignment of error. The appeal, being from a matter committed to the discretion of the court of quarter sessions, is a mere substitute for a certiorari, and the jurisdiction of the appellate court is restricted to a review of the record proper, of which the evidence and the opinion of the court form no part.

*Courts defined—Powers of associate judges—Dissent of president judge.*

A court is a tribunal established for the public administration of justice, and composed of one or more judges, who act for the purpose at fixed times and places. A court, to which the approval of the report of county line commissioners was committed, was composed of three judges, the president and two associates, and there being nothing in the statutes vesting this court with jurisdiction of the cause, to indicate that the associates were to have no right to participate in the decision, the associate judges have the right not only to hear and advise, but to decide, and the fact that the president judge dissented from their decision does not affect their decision. The order made by the majority must be considered as the action of the court.

*County line disputes—Jurisdiction of courts of both counties—Final judgment depends on approval of both courts.*

Reports of county line commissioners must be filed in and approved by the courts of both counties. Neither court has jurisdiction to end the controversy ; there can be no final judgment until both courts have acted. The court of one county is not bound to approve the report because the court of the other county has done so.

*Judicial discretion must not be arbitrary.*

The duty of approval by a court of the report of county line commissioners is judicial and not arbitrary or wilful. It must be exercised upon facts and circumstances before the court after they have been heard and duly considered.

*Practice, Q. S.—Proceedings to determine county line—Exceptions filed in one court.*

The report of commissioners to determine the true line between Huntingdon and Mifflin counties was filed in both counties. Exceptions were filed in Huntingdon and not in Mifflin, but such exceptions are to be considered as pending also in Mifflin county court. An order refusing approval to the report pending consideration of such exceptions by the Mifflin county court is interlocutory in its nature, and no appeal lies until final decree has been made after the parties to the proceedings have had full opportunity to be heard.

Argued March 23, 1898. Appeals, Nos. 19 and 20, March T., 1898, respectively made by Huntingdon County and Mifflin County to the decrees of Q. S. Mifflin Co., April Sess., 1897, No. 37, and to the decree of Q. S. Huntingdon Co., Septem-

ber Sess., 1895, No. 6, refusing and approving the report of commissioners appointed under the Act of April 17, 1876, P. L. 42, and the supplement thereto of May 22, 1895, P. L. 97, to survey and mark the dividing line between the counties of Huntingdon and Mifflin, lying between the Centre county line and the Juniata river. Before RICE,. P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Appeals dismissed.

Exceptions to report of boundary commissioners.

It appears from the record that the report of the boundary commissioners appointed to designate, survey and mark that part of the line between the counties of Huntingdon and Mifflin lying between the Centre county line and the Juniata river, was filed in the court of quarter sessions, Huntingdon county, and was heard on exceptions to report of commissioners, before STEWART, P. J., of the 39th judicial district, specially presiding, who approved the report and dismissed the exceptions in an opinion reported in 6 Dist. Rep. 712.

The report was subsequently filed as of April sessions, 1897, No. 87, in the court of quarter sessions of Mifflin county, and a petition filed asking for its approval, and on June 30, 1897, the associate judges filed the following decree of the court:

"And now, to wit: June 30, 1897, the report of the commissioners appointed to run and mark the county line between the counties of Huntingdon and Mifflin, pursuant to the act of assembly approved April 17, 1876, and its supplement of the 22d day of May, 1895, having been presented to the court of quarter sessions of Mifflin county, on due consideration thereof, the said court hereby refuses to approve said report and declines to order the same to be recorded."

BAILEY, P. J., filed the following dissenting opinion:

"Now, June 30, 1897, exceptions to the report above referred to, having been filed in Huntingdon county, when, after a full hearing, they were overruled by Hon. JOHN STEWART, P. J., of the 39th judicial district, specially presiding, and the report approved and ordered to be recorded; the same report being now presented for approval in Mifflin county and no exceptions having been filed to its approval here, I cannot concur in

the decree of my associates refusing to approve said report and in declining to order it to be filed."

Huntingdon county appealed from the judgment and decree of the court of quarter sessions of Mifflin county refusing to approve the report of the commissioners, and Mifflin county appealed from the judgment and decree of the court of quarter sessions of Huntingdon county approving the report of the commissioners and directing the same to be filed.

Both appeals were argued together before the Superior Court.

In No. 19, March term, 1898, Huntingdon County's Appeal, the following error was assigned: The court erred in making the decree refusing to approve the report of the commissioners, reciting same.

In No. 20, March term, 1898, Mifflin County's Appeal, the following exceptions were filed on behalf of Mifflin county: 1. The court erred in dismissing the first exception filed to the report of the commissioners, to wit: the act of assembly under which the said line was run and report made is unconstitutional. 2, 3. In dismissing exceptions to the report of the commissioners which attacked the conduct of the commissioners and the integrity of the line reported by them.

*Saml. I. Spyker, H. H. Waite* and *W. M. Williamson*, for Huntingdon county, appellant, from decree of Q. S. Mifflin county, refusing to approve the report of commissioners, No. 19, March term, 1898.—The error complained of was the arbitrary action of the associate judges in overruling the president judge and refusing to approve the report of the commissioners appointed to mark the line between the counties of Huntingdon and Mifflin. This was a purely legal question beyond the scope of the supervisory jurisdiction of associate judges: Glamorgan Iron Co. v. Snyder, 84 Pa. 397.

The act of assembly does not give to either court any discretion in the matter of the approval of the report, but Mifflin county, having filed exceptions, a patient hearing was given in the Huntingdon county court, which is binding.

When a party has had a fair trial in a court of law the decision is res adjudicata: Myers v. Kingston Coal Co., 126 Pa. 582.

Where two tribunals have concurrent jurisdiction, the jurisdiction of that one which first has possession of the subject-

matter is exclusive: Slyhoof v. Flitcraft, 1 Ashmead, 171; White v. Johnson, 2 Ashmead, 146; Atkinson v. Hines, 5 Phila. 16.

The two associate judges arbitrarily refused to perform their duty. They were bound under the law of 1895 to approve this report. They had no discretion in the matter. No exceptions were filed to justify them in the course they pursued.

When a discretionary power, coupled with a duty, is vested in a public official, he is compelled to perform it in a proper case: Haines v. Com., 11 W. N. C. 289.

*John A. McKee* and *F. W. Culbertson*, for Mifflin county, appellee.— By the Act of April 14, 1834, P. L. 333, the judges of the courts of common pleas of each county, any two of whom shall be a quorum, shall compose the courts of quarter sessions of the peace thereof.

By the Act of April 15, 1851, P. L. 648, provision is made for the election of a president judge and two associate judges for certain counties.

Article 5, section 4 of the constitution provides, " Until otherwise directed by law the courts of common pleas shall continue as at present established, except as herein changed."

The associate judges are judges of the courts of common pleas and any two of the judges of that court shall constitute a quorum: Kahrer's License, 12 C. C. R. 12; Branch's License, 164 Pa. 427.

They have the right to address the grand jury and deliver their opinion on every subject that occurs in court, and for refusing this right the president judge is liable to impeachment: Addison's Trial, 154.

Under certain circumstances they may grant or refuse new trials (Reiber v. Boos, 110 Pa. 594); and their right to grant or refuse a license on the hearing of the application is undoubted: Leister's Appeal, 20 W. N. C. 224. On the subject of the power of associate judges, see also Glamorgan Iron Co. v. Snyder, 84 Pa. 397.

If the contention of appellant that under the act of 1895 the court had no discretion in the matter, that it was bound to approve the report is correct, that the law is mandatory, then the act of 1895 is clearly unconstitutional in that it offends

against article 3, section 3 of the constitution because the title does not give notice of the design in the act to take away the discretion of the court, and is therefore misleading.

Legislative discretion to perform a judicial function in a particular way would be a direct violation of the constitution: O'Conner v. Warner, 4 W. & S. 223.

*John A. McKee* and *F. W. Culbertson,* for Mifflin county, appellant, in the appeal from the decree of Q. S. Huntingdon Co., No. 20, March Term, 1898.—The Act of May 22, 1895, P. L. 97, is unconstitutional in that it contains more than one subject not clearly expressed in its title. The title of an act is a part of the act, a guide to its right construction. The effects, not the purpose of the act, determine its validity: Penna. Railroad Co. v. Riblet, 66 Pa. 164; Com. v. Lloyd, 2 Pa. Superior Ct. 6.

In this case the effect of the act is a clear usurpation of a power prohibited, taking from the court its judicial discretion by commanding it to approve the report and order it to be recorded, and will justify pronouncing the act of the legislature unconstitutional.

The legislative direction to perform a judicial function in a particular way would be a direct violation of the constitution: O'Conner v. Warner, 4 W. & S. 223; Roney v. Warwick, 37 W. N. C. 253.

Our complaint is that no notice of this purpose and intention to control the action of the court is indicated in the title to the act of 1895. Moreover, the legislature cannot abolish any of the courts mentioned in the 5th article of the constitution of Pennsylvania, nor divest them of their entire jurisdiction: Com. v. Green, 58 Pa. 226.

The balance of the argument of appellant's counsel is directed to the dismissal by the court below of the exceptions to the report of the commissioners, being addressed to the merits raised by said exceptions as to the alleged misconduct of the commissioners on the line found by them and reported to the court as the true boundary line.

*Samuel I. Spyker, H. H. Waite* and *W. M. Williamson,* for Huntingdon county, appellee.—If the title clearly gives notice

of the subject of the act so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary : State Line & Railroad Co.'s Appeal, 77 Pa. 429.

All that is necessary in the title of a supplement is a specific reference to the original by its title, giving the date of its approval and declaring it to be a supplement : Phila. v. Ridge Ave. Railroad Co., 142 Pa. 484.

The original act provided for the approval of the report by the court and a similar provision is in the supplement, and of course is germane.

When the report of the commissioner was presented to the court of quarter sessions of Huntingdon county, the appellant appeared and filed twenty-two exceptions.    They raised every possible objection to the regularity of the proceedings, and the good faith of the commissioners.

The completed report having been submitted to the court of quarter sessions of Huntingdon county, after a patient hearing, it received the approval of one of the ablest judges of our commonwealth and his judicial discretion having thus been exercised is not subject to review by the appellate court.

OPINION BY RICE, P. J., October 10, 1898 :

Commissioners duly appointed in accordance with the provisions of the Act of May 22, 1895, P. L. 97, " to designate, survey and mark that portion of the boundary line between Huntingdon and Mifflin counties lying between the Centre county line and the Juniata river," filed their report in the court of quarter sessions of Huntingdon county.    Exceptions were filed by the county commissioners of Mifflin, depositions were taken, and, after hearing, the court overruled the exceptions, approved the report, and ordered it to be filed.    Afterwards, the county commissioners of Huntingdon presented to the quarter sessions of Mifflin a petition, accompanied by certified copies of the report and map, as well as of the exceptions and the decree, in which, after reciting the proceedings above referred to, they prayed the court " to direct the said report and map to be filed, to approve the same and direct it to be recorded."    The record shows that a motion to the same effect was made on behalf of the county line commissioners.    At the same time J. C. Swigart, one of the county line commissioners, presented an ex-

tended report, dissenting from the conclusions of the majority, and submitted with it the minutes, testimony, drafts, maps and records put in evidence before the commission.

It will be important to notice hereafter, that all these proceedings in Mifflin county occurred on June 30, 1897. We have no means of knowing, with absolute certainty, all that took place on the hearing of the motion above referred to, but it would seem probable that Huntingdon county made the same claim there, as here, that the court had no discretionary power in the matter, and, therefore, that it was its duty to approve the report forthwith. Be that as it may, the two associate judges held differently, and made the following order, from which the president judge dissented: "And now, to wit: June 30, 1897, the report of the commissioners appointed to run and mark the county line between the counties of Huntingdon and Mifflin . . . . having been presented to the court of quarter sessions of Mifflin county, on due consideration thereof, the said court hereby refuses to approve said report and declines to order the same to be recorded." From this order the commissioners of Huntingdon county appealed to this court, and from the order of the quarter sessions of Huntingdon the Mifflin county commissioners appealed. Both appeals were argued at the same time, and may be considered together.

The Act of April 16, 1876, P. L. 42, entitled "An act to provide for running and marking county lines," provided, inter alia, that copies of the report of the commissioners should be filed in the court of each county, and, "if approved by the court," should be recorded. The Act of May 22, 1895, P. L. 97, entitled "An act to amend the act of 1876 (giving its title) increasing the number of commissioners to five, and providing for advertising," provides that "copies of said report shall be filed in each court, and shall be approved by the court and ordered to be recorded." It will be observed, that under the amended, as well as under the original, act, the report is not entitled to be recorded until it shall have been approved by the court. This implies the power and duty to determine whether or not the report is entitled to approval. If it should be made to appear to the court, by the report, or in any other legitimate way, that the findings of the commissioners as to the true location of the line were clearly wrong, or that, instead

of locating the line as established by law, they had undertaken to establish a new boundary line, or that the report was procured by corrupt influences brought to bear by interested parties upon the commissioners, it surely was not intended, that the court must stultify itself by adding its approval to the illegal proceeding. The selection of the word "approve," to define the jurisdiction of the court over the proceedings, the general presumption that the legislature will not confer upon the courts a jurisdiction shorn of the incidental judicial powers absolutely essential to its exercise, and the absence from the title of the act of anything to give notice of a provision making that mandatory which was before discretionary are considerations which cannot be overlooked in the construction of this section. An interpretation which leads to the conclusion that the legislature has deliberately disregarded a constitutional limitation upon its powers or a constitutional mandate as to the form of legislative enactment is always to be avoided if possible, although at first view such interpretation might seem most obvious and natural; for it is always to be presumed that the legislature designed the statute to take effect, and not to be a nullity. To carry out the intent of the legislature disjunctive words have been given a conjunctive meaning and permissive words have been construed as mandatory. So here, looking at all the evidences of the legislative intent, we are warranted in concluding that, in conferring upon the courts the jurisdiction to approve the report, the legislature did not intend to deprive them of the judicial power to hear and determine before exercising it. As the learned judge who presided at the hearing in Huntingdon county well says: "Approval by the court is a judicial act implying, necessarily, concurrence to some degree at least, and concurrence, when applied to judicial action, is not a matter that is enforceable by legislative enactment. There could be no object whatever in mere perfunctory approval without judgment or discretion. Such an act could lend nothing to the proceedings, and it is impossible to conceive why it should be required as preliminary to the recording of the report. If the purpose were to eliminate the discretion of the court the word approval would not have remained. The very use of it without regard to its qualification is wholly inconsistent with the idea that there was any intention to constrain judicial action.

To suppose the contrary is to impute to the legislature an ignorance or disregard of the plain distinction between legislative and judicial power; either this or to impose upon the courts as a judicial duty that which is both useless and meaningless. Such considerations without more are sufficient to warrant the conclusion that our power of revision is unaffected by the change of phraseology, and all that could have been done under the original act we may do now." We concur in this conclusion.

Upon this construction of the act of 1895 no well founded objection can be raised as to its constitutionality.

The remaining assignments of error filed by Mifflin county relate to the merits of the controversy between the two counties, as disclosed by the evidence taken in support of the exceptions, and to the alleged misconduct of one of the commissioners. They require a brief consideration of the power and duty of the commissioners, the jurisdiction of the quarter sessions to review their findings, and our jurisdiction on appeal.

The duty of commissioners appointed under the act of 1895 is to designate, survey and mark the boundary line as established by law. It is too clear for argument that they have no authority to establish a new line. Judge STEWART correctly defined their duties when he said: "This line (the county line) was an existing fact but obscured. It was the duty of the commission to discover and define it. The return of any other than the original and true line would not, of course, be compliance with the law, and could not receive the approval of the court. Any such arbitrary and unwarrantable action of the commission would defeat the report necessarily. A stronger reason for judicial interference could not be suggested." Nor, we may add, is their report, that the line returned by them is the true line, conclusive of the question. As we have already shown, the report must come before the court for approval, and the court is not bound to approve it in the face of allegation and clear proof that the findings of fact are erroneous. It is immaterial, so far as the discretionary power of the quarter sessions is concerned, whether it appear on the face of the report or is shown by extraneous evidence that the commissioners exceeded their powers. In either case it is the duty of the court to withhold judicial sanction. But where the action

of the commissioners, as shown by the report, was apparently regular and in conformity to law, and the allegation that the line as run and returned by them is not the actual boundary line, depends upon extraneous evidence, the determination of the disputed questions of fact by the quarter sessions is not the proper subject of an assignment of error. The same is true of an allegation of misbehavior on the part of the commissioners or of the officials of one of the counties. The reason is, that where an appeal from a decree in a matter committed to the discretion of the court of quarter sessions is a mere substitute for a certiorari—as it is in the present case—the jurisdiction of the appellate court is restricted to a review of the record proper, of which the evidence and the opinion of the court form no part. Nothing is better settled than this: In re Kensington Turnpike, 97 Pa. 260, and cases there cited; Darby v. Sharon Hill, 112 Pa. 66; Holland v. White, 120 Pa. 228; Rand v. King, 134 Pa. 641, and cases there cited; Grieb v. Kuttner, 135 Pa. 281; Camp Hill Borough, 142 Pa. 511; Hamilton Street, 148 Pa. 640; Com. v. Ramsay, 166 Pa. 642; Overseers v. Overseers, 2 Pa. Superior Ct. 397; Jefferson Township Road, 3 Pa. Superior Ct. 467; Com. v. Tragle, 4 Pa. Superior Ct. 159; In re Annexation of Morrellville Borough, 7 Pa. Superior Ct. 532. The citation of cases, to the same effect, might be extended indefinitely, but it is unnecessary. The whole subject of the jurisdiction of the appellate court upon certiorari was exhaustively considered in Chase v. Miller, 41 Pa. 403, Penna. R. R. Co. v. Lutheran Congregation, 53 Pa. 445, and Election Cases, 65 Pa. 20, and little has been added since except the accumulation of precedents following and sustaining the principles there enunciated, and the settlement of the practice under the act of May 9, 1889, P. L. 158.

It is true the evidence has been printed, and the facts were very earnestly and ably argued by counsel. The dispute between these two counties is one of long standing and ought to be set at rest. Nevertheless, a reversal of the decree of either court, upon the ground that the evidence ought to have led the court to a different conclusion, would be a clear usurpation of authority on our part. We therefore dismiss these assignments, without further expression of opinion upon the questions intended to be raised thereby.

We come, then, to the single assignment of error filed by the commissioners of Huntingdon, to the refusal of the quarter sessions of Mifflin to approve the report, and direct it to be recorded. This order is attacked upon three grounds: first, because the act of 1895 is mandatory, and the court had no discretionary power to refuse approval of the report; second, because the associate judges had no authority to overrule the president judge; third, because the approval of the report by the Huntingdon quarter sessions after a full hearing was an adjudication of all the questions of fact and of law raised by the exceptions, which the court of Mifflin county was bound to accept as final and conclusive.

We have already considered and overruled the first objection, and need not discuss it further.

The second objection is based on the erroneous proposition that the only duty of the court is to examine the report and determine therefrom whether the proceedings of the commissioners have been regular and in conformity to law. It is argued that this is a purely legal question requiring for its determination legal training and experience, which, it is asserted, associate judges not learned in the law do not possess; therefore they have no authority to act in the matter. We cannot assent to the premises or concur in this conclusion. The issue raised by the exceptions—which, we remark in passing, were as effectually before the Mifflin court as if they had been originally filed there—involved questions of fact as well as of law, which were to be determined, not by the president judge alone, but by the court. "A court is a tribunal established for the public administration of justice, and composed of one or more judges, who sit for the purpose at fixed times and places attended by proper officers:" Butts v. Armor, 164 Pa. 73. The court to which the petition and motion were addressed and which took cognizance of them was composed of three judges, the president and two associates, and there is nothing in the statute regulating the proceeding to indicate that the latter were to have no right to participate in the decision. The cases of Glamorgan Iron Co. v. Snyder, 84 Pa. 397, and Korman's Application, 162 Pa. 151, were decided upon a construction of the acts relating to special courts and the powers of judges of other districts called in to hold them.

Nothing was actually decided in either of those cases to warrant us in holding, that the associate judges have no authority to take part in the determination of a matter like that under consideration. Being members of the court, they had a right, not only to hear and advise, but to decide, and the fact that the president judge dissented from their decision did not affect the validity of their action. The order made by the majority must be considered, as it purports to be, as the action of the court. See Reiber v. Boos, 110 Pa. 594; Van Vliet v. Conrad, 95 Pa. 494; Branch's License, 164 Pa. 427; Butts v. Armor, supra; Com. v. Kryder, 1 Penny. 143; Sperring's License, 7 Pa. Superior Ct. 131.

The doctrine of res adjudicata, and the rule that where two tribunals have concurrent and complete jurisdiction, the jurisdiction of that one which first has possession of the subject-matter is exclusive, have no application to a proceeding under the act of 1895. The legislature deemed the matter of such importance, and the interests to be affected by a possible relocation of a line which had been tacitly acquiesced in for years, so great and varied, that it ought not to be left to the exclusive determination of the court of either of the counties to be affected. Hence they declared that copies of the report must be filed in each court, and the report must receive the approval of each court, before it can have the effect of fixing the location of the line. Neither court has jurisdiction to end the controversy; there can be no final judgment until both courts have acted. See Youghiogheny Bridge, 168 Pa. 454. As it happens in the present instance, the report was not filed in Mifflin county until after it had been acted on by the quarter sessions of Huntingdon. But this was not because of anything in the law requiring it. It was manifestly not the intention of the legislature to put it in the power of the commissioners to prevent the court of either county from exercising its discretion by their simple election to file the report in the court of the other county. A copy might have been filed in each court at the same time, and in that case neither would have been compellable to wait on the other before taking action nor to suspend its consideration of the matter when the other entered a decree. To hold otherwise would be to make the determination of the question depend

upon a race between the two courts—a conclusion so unreasonable as not to require discussion. We therefore hold, that the court of Mifflin county was not bound to approve the report because the court of Huntingdon county had done so.

It is not within our province to discuss the wisdom of the provision requiring the approval of two courts of equal jurisdiction acting independently; it is sufficient for us to know that such is the clear intent of the law.

The act of deciding is judicial and not arbitrary or wilful. The discretion vested in the court is, therefore, a sound judicial discretion; and to be a rightful judgment it must be exercised upon the facts and circumstances before the court after they have been heard and duly considered: Schlaudecker v. Marshall, 72 Pa. 200, 206. Therefore, in holding that the approval of the report is a matter resting in the discretion of the court of quarter sessions we are not to be understood as implying that the court may arbitrarily refuse to approve where the procedure and findings of the commissioners, as shown by their report, were in every respect regular and in conformity to law and there is neither allegation nor proof to the contrary. The president judge of Mifflin assumed that the case was in this situation, and that, as there appeared to be no legal reason for refusing, it was the duty of the court to approve the report. But conceding that this was the situation of the case at the time the motion was made, it does not follow, that the petitioners were entitled to have their motion granted and the report approved forthwith. It is true no exceptions had been filed in Mifflin county, but exceptions had been filed in Huntingdon county, and a certified copy of the same was attached to the petition. They had not been withdrawn, and, as we have attempted to show, the order made by the court of Huntingdon county was not a conclusive adjudication of the questions raised thereby. Considering the nature of the proceeding, it might be said with much show of reason, that the exceptions were to be regarded as pending in the court of Mifflin county. But even if it be assumed that that court was not bound, and would not have been authorized, to take notice of them, it would have been clearly irregular to approve the report without giving Mifflin county an opportunity to renew its exceptions and to submit to the court the evidence taken in support of them. No

such opportunity had been afforded—at least as far as the record shows—when the motion was made. It is clear, therefore, that the petitioners were not entitled to have the report approved at that time. The case was not in condition for final adjudication, and the order made is not necessarily to be so construed. Even if it were, reversal would result simply in sending the case back with direction to proceed to a hearing according to law. While, perhaps, the better course would have been to appoint a time when Mifflin county could present its exceptions and the evidence taken in support of them, the same result will be reached if the order be treated (as it fairly may be) as a simple refusal to approve the report and to order it to be recorded at that time. Thus viewed there was no error in the action of the court. The order was interlocutory in its nature, and no appeal will lie until final decree has been made after the parties to the proceeding have had a full opportunity to be heard.

The assignment of error filed by Huntingdon county, No. 19, March term, 1898, is overruled, and the appeal from the order of June 30, 1897, is dismissed; without prejudice, however, to the right of the commissioners of Huntingdon county to move the court of quarter sessions of Mifflin county to appoint a time for hearing their petition, at which the commissioners of Mifflin county may present their exceptions to the report of the county line commissioners, and the evidence taken in support of, and against the same, may be submitted.

OPINION BY RICE, P. J., October 10, 1898:

The assignments of error filed by Mifflin county, No. 20, March term, 1898, are overruled, and the appeal is dismissed. For order and reasons therefor, see No. 19, March term, 1898.