## Summers v. Kramer, Controller, et al., Appellants.

*Courts — Judges — Conflict between judges — Equal division of opinion—Contract.*

1. An order made by one of two judges comprising a court, can have no legal effect on an executed contract made under the authority of both judges.

2. An allegation that one judge understood the total expense to be incurred under a contract would not exceed a given sum, will

not constitute a defense to a claim under the contract, where there is no averment he was misled by the parties thereto.

3. No judge of a court has the power to exclude his colleague, against the objection of the latter, from taking part in the hearing and decision of any pending controversy.

4. Where the sitting judges are equally divided as to the judgment or decree which should be entered, the motion or rule under consideration fails, and an order should be entered accordingly.

5. Where one of two sitting judges, against the protest of his colleague, orders à judgment to be entered, the Supreme Court will direct its removal from the record.

6. A judge should refuse to sit in a case if the controversy depends upon the propriety of an ex parte order made by him, which he insists is proper and his colleague alleges is not.

7. When it is apparent the judges of a court are equally divided regarding the decision of a case, growing out of a matter in which theretofore both had acted, each should refuse to sit, and should call in some other judge to decide the controversy.

8. It is almost or quite as essential, under our system of government by law, that justice should be judicially administered by the courts, as that it should be administered at all.

9. Where the judges of a court of first instance are hopelessly divided in a given case and do not call in another judge to decide it, the Supreme Court will, on appeal, assign it to some other judge for hearing and decision.

Argued May 9, 1921. Appeals, Nos. 184 and 187, Jan. T., 1921, by defendants, from order of C. P. Northumberland Co., May T., 1920, No. 333, awarding writ of per-emptory mandamus, in case of Clarence A. Summers v. Oswald Kramer, Controller, and David Hughes et al., Commissioners of Northumberland County. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Petition for writ of mandamus.

The opinion of the Supreme Court states the facts.

The court sustained a demurrer to the return, and awarded the writ. Defendants appealed.

*Error assigned,* among others, was order, quoting it.

*Charles C. Lark,* with him *J. P. Carpenter* and *F. A. Witmer,* for appellants, cited: Myers v. Coal Co., 212 Pa. 193; Carter's Est., 254 Pa. 518.

*Ira J. Williams,* of *Brown & Williams,* and *J. Fred Schaffer,* for appellee.—The disqualification of a judge for matters apparent on the face of the record should, as matter of sound procedure, be ruled either by himself or by the remaining judges of the court, whether one or more; and if a judge was in fact and in law disqualified, his so-called dissenting opinion should be considered as a nullity, whether there were one or more judges sitting in the court.

The purely legal business of a court of original jurisdiction must be subject to the control of a single judge, if efficiency, promptitude, and official responsibility are worth maintaining: Com. ex rel. v. Lenhart, 241 Pa. 137.

OPINION BY MR. JUSTICE SIMPSON, July 1, 1921:

In pursuance of a petition, the Court of Common Pleas of Northumberland County appointed five leading members of its bar to examine the records and files in the prothonotary's office, and to inform the court whether or not it would be wise to reindex and refile them, as authorized by the Act of May 26, 1891, P. L. 129. The committee reported unanimously in favor of having the work done, and stated the maximum price per name which should be paid for doing it; whereupon the court authorized the prothonotary to prepare specifications and obtain a contract for the work, which were not to become effective, however, until submitted to and approved by the court. After this was done, and pending their approval, counsel for a taxpayers' association of the county, called upon the judges, stated to them that the expense would probably amount to $40,000, and requested time to make the necessary investigation in regard thereto. His request was granted and in about two weeks he reported to the court that, from the best infor-

mation he could obtain, the expense would be considerably more than $40,000. The court consisted of but two judges, and the associate judge took the papers for consideration; at the end of an additional two weeks, both judges approved the contract and specifications, which were then duly executed by the prothonotary and contractor, the price named being that fixed by the committee of the bar.

Seven months later, and after considerable work had been done under the contract, the associate judge filed an order directing the prothonotary and contractor to file a written statement specifying the "approximate total cost of all the work," and adding: "We think the future action of the court in the premises should depend upon what is contained in the statement made and filed in compliance with this request. In the meantime, and until some future action is taken by the court, we would be constrained to decline to approve any bills presented for work done under this contract after the filing hereof, nor would we recommend that the same be approved by the controller or the county commissioners." This ex parte order was made without the consent of the president judge, caused an antagonism between the associate judge and the prothonotary, and resulted in the former not receiving the information he sought. Perhaps this failure is not to be wondered at, but is none the less to be regretted, for the utmost confidence should exist between each member of the court and its officer, and the latter should always be willing and anxious to give to the former all the information desired regarding matters connected with the court, and the records in his charge.

Still later, the associate judge filed another order and served copies thereof upon the prothonotary, the contractor, the county commissioners and the county controller, in which he said: "I am fully conscious that I can speak for myself only.' I hereby order and direct that the decree made by the court in this matter...... be annulled and set aside. The prothonotary is di-

rected to discontinue all work under the contract......
which is predicated upon this said decree. And further,
the county commissioners and county controller are not
requested or required to honor or approve any bills pre-
sented for work done after this date on any contract
based upon such decree."

This order also was made without the consent of the
president judge, and without any opportunity being
given the contractor to present his side of the contro-
versy. The two orders were founded upon an averment,
expressed in them, that "at the time the contract was ap-
proved it was represented to the court that the approxi-
mate total cost or maximum for the completion of the
work would not exceed $20,000," and that he, the addi-
tional law judge, "joined in the decree and approval of
the contract when [he] believed, from [his] best informa-
tion, that the maximum cost would not exceed $20,000."
He inferentially admits therein, however, "that the work
is necessary and is being done at the same rate usually
paid for similar work in this county." There is no denial
of the fact that he held up the approval of the contract
for two weeks after he was advised, by counsel for the
taxpayers' association, that the work would probably
cost considerably more than $40,000; and he does not
aver, either in these orders or elsewhere, so far as this
record discloses, that at any time he was misled by the
committee of lawyers, the president judge, the prothono-
tary or the contractor. In view of this, it requires no
argument to show that those orders can have no legal ef-
fect on the contract authorized by both judges; and that
the statements, above quoted, would not even constitute
a defense in a suit on the contract.

Before either order was made, the contractor had been
paid a portion of the contract price, calculated and cer-
tified in the manner provided by the contract, that is to
say, upon approval by the prothonotary, the issuance of
a warrant by the county commissioners, its endorsement
by the county controller and its payment by the county

treasurer. When the second payment became due under the contract, the prothonotary certified that the bill was correct, but the commissioners refused to issue a warrant for its payment, giving the order of the additonal law judge as the only reason for the refusal. The controller also refused to act, partly for the same reason and partly because no warrant had been drawn by the county commissioners.

The contractor then presented to the president judge a petition for a mandamus, and, an alternative writ having been allowed and issued, returns thereto were made by the county commissioners and the county controller, the objection of each of them to the allowance of a peremptory writ being almost entirely because of the last-quoted order of the additional law judge. Plaintiff demurred to the returns, and, a day having been fixed for argument, respondents moved that it be heard by the court in banc. This was objected to by plaintiff and refused by the president judge, upon the ground that his associate had prejudged the case by the order referred to; and the president judge, therefore, assigned the hearing before himself alone. He granted respondents an exception to this ruling, and his right to exclude the additional law judge is the subject of the first assignment of error.

So far as the record discloses, the additional law judge had nothing to do with this motion or the action upon it, and, when the case was reached for argument, he sat with the president judge during the entire hearing. Apparently they did not consult regarding the disposition of the case, but subsequently the president judge handed down an opinion awarding a peremptory mandamus, the additional law judge dissented from that ruling, and, from the judgment directed by the former, respondents prosecuted the present appeals.

It is urged by appellee that the president judge's opinion is correct in point of law, and the additional law judge's is not, and hence we should affirm the judgment entered by the former. The difficulty with this position

is, however, there is no judgment to affirm. It requires the action of a majority of the court to authorize the entry of a judgment; no one judge can enter it, against the protest of his only colleague, who has an equal right to pass on all matters pending in the court: Madlem's App., 103 Pa. 584; Butts v. Armor, 164 Pa. 73; Myers v. Consumers Coal Co., 212 Pa. 193. Ordinarily, when the sitting judges are equally divided as to the judgment or decree which should be entered, the motion or rule fails and an order is entered accordingly (Madlem's App., supra; Beltzhoover v. Darragh, 16 S. & R. 329; 11 Cyc. 760; 15 Corpus Juris 966); but here there is not even this legal action on the demurrer. "What is ordered and adjudged by the court, not merely what is entered, constitutes the judgment": Butts v. Armor, supra. "If the learned judges below cannot agree upon a proper decree [or judgment], they have the power to call upon a judge from another district to decide the case for them. But until we have a lawful decree we cannot reach the merits": Madlem's Appeal, supra.

It is no answer to say that, by the prior ruling of the president judge, his colleague was excluded from taking part in the hearing and decision of the case. As each had equal power and authority in the court, neither had a legal right to exclude the other from participation in its business. In order to expedite the trial or argument of causes, custom allows the president judge to assign the business, when the several court rooms are occupied by the judges separately; but this practice cannot be utilized to prevent a judge from taking part in the hearing or decision of any cause pending in the court of which he is a member. Nor is this conclusion affected by the fact that the order excluding the additional law judge remains unreversed; he was not a party to it, and had no right or occasion to appeal from it.

The case is before us, therefore, on an appeal from a record apparently showing a judgment, when no legal judgment exists; we must remove this illegal thing from

that record; and in doing so, regretfully repeat what was said in Butts v. Armor, supra: "The personal antipathies, engendered by litigation, between the members of this [judicial] family, seem to have promoted hopeless discord in the tribunal appointed by law to settle strife. The court apparently resolved itself into a sort of debating society, each member maintaining his side of the question by an opinion filed of record, with the not unusual result of this kind of debate, the further it proceeded the more remote was the end of it."

When the additional law judge learned that respondents, in their returns to the alternative writ, were relying upon his order, he should at once have recognized that, though he was not technically a party to the proceedings, he was the real cause of the litigation, that the whole controversy would center about him and the validity of his ex parte orders, and hence should have refused to take part in the hearing or decision of the case. When it was ascertained he intended to act, despite the order of the president judge assigning the hearing of the case to himself alone, the latter should have recognized the matter had passed beyond the stage where the only question was who was right and who was wrong, and that, if the argument then proceeded, it would almost certainly result in the controversy between himself and his colleague becoming public property, personalities would be injected into the decision of the purely legal question raised by the demurrer, the tendency would be to bring the administration of justice into disrepute, and indirectly to impair the usefulness of the court, as a court, in all other cases. Since Coke on Littleton, 58a, it has been many times accurately said that a court is "a place where justice is judicially administered" (see Murdy v. McCutcheon, 95 Pa. 435, 437); under our system of government by law, the business of the court should, therefore, always be so conducted as to command the respect of the people, even in cases where some or many of them are not willing to accept its judgments or decrees as correct; and hence

it is but a truism to say that these requirements are almost or quite as essential as the judicial system itself, if the stability of the government, under that system, is to be maintained. Whenever the judges composing a court differ in the way these did, it is difficult, if not impossible, to convince the community that ulterior or personal motives did not cause their disagreement. It helps but little for one to say he is right and the other wrong; each will say it, and, though it may be true as to one, the friends and partisans of the other will not admit it, and their clamor, rightfully or wrongfully, will result in an injury to the court, and may seriously impair its future usefulness. If no other course is open for the judge, who is in the right, than to proceed to judgment, personal considerations should not cause him to hesitate, even for a moment; but, in the instant case, the statutes of the State furnish ample remedy, for, as said in Madlem's Appeal, supra, judges who hopelessly disagree "have the power to call upon a judge from another district to decide the case for them." Moreover, even though the law were otherwise as to the court below, our power and duty are clear.

By section 13 of the Act of May 22, 1722, 1st Smith's Laws, 136, 140, it is provided "That the said judges [of the Supreme Court] shall have full power to hold the said court and therein to......exercise the jurisdictions and powers hereby granted concerning all and singular the premises according to law as fully and amply, to all intents and purposes whatsoever, as the justices of the Courts of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them, may or can do." By section 1 of the Act of June 16, 1836, P. L. 784, it is provided: "That the Supreme Court of this Commonwealth shall have power to hear and determine all and all manner of pleas, plaints and causes which shall be brought, or removed there from any other court of this Commonwealth......to examine and correct all and all manner of errors of the......courts of this commonwealth in the

process, proceedings, judgments and decrees, as well in criminal as in civil pleas or proceedings, and, thereupon, to reverse, modify or affirm such judgments and decrees, or proceedings, as the law doth or shall direct; and, generally, to minister justice to all persons, in all matters whatsoever, as fully and amply, to all intents and purposes, as the said court has heretofore had power to do, under the constitution and laws of this commonwealth."

These statutes have been applied in many interesting and important causes, most of the modern ones, which have been bitterly contested, having grown out of proceedings in the criminal courts (Commonwealth v. Simpson, 2 Grant 438; Commonwealth v. Ickhoff, 33 Pa. 80; Commonwealth v. Balph, 111 Pa. 365), there being, however, a goodly sprinkling of civil suits running from Livezey v. Gorgas, 2 Binney 192, to Schmuck v. Hartman, 222 Pa. 190. The Act of 1836 applies "as well in criminal as in civil pleas or proceedings," and the court of King's Bench, to whose jurisdiction ours is assimilated under the Act of 1722, had "cognizance of both civil and criminal causes": 3 Blackstone's Commentaries *42; Coke's Institutes of the Laws of England *71; 6 Bacon's New Abridgment of the Law 438. Under these statutes and decisions it is clear we have the right, without considering what the court below could or should have done, to direct this case to be heard by some judge against whom no question of prejudgment can be urged; but we will not further enter this tempting historical field, since, by section 2 of the Act of May 20, 1891, P. L. 101, express power is given us to make such an order. This statute provides that "The Supreme Court shall have power in all cases to affirm, reverse, amend or modify a judgment, order or decree appealed from, and to enter such judgment, order or decree in the case as the Supreme Court may deem proper and just, without returning the record for amendment or modification to the court below." Under this statute, (which, so far as relates to cases decided by the court

of first instance, probably grants all the power given by the Acts of 1722 and 1836), upon reversing a "judgment, order or dcree," we may "enter such......order...... [as we] may deem proper and just," and we are clearly of opinion that the only "proper and just" order which can be made in the present case, is to require it to be heard and decided by some judge, who had no part in this unfortunate controversy, whose orders have not been attacked by his colleague, and against whom no one, interested or otherwise, can even seemingly make just complaint. This is only fair to the litigants, and, as stated, is essential to the proper administration of justice.

The judgment directed by the president judge of the court below is reversed, the record is remitted with a procedendo, and the Hon. William C. Ferguson, associate judge of the Court of Common Pleas No. 3 of Phila. County, is hereby authorized and directed to proceed with the case according to law.